JOSEFINA CANTELLOPS, demandante y recurrida, v. SERGIO CAUTIÑO BIRD, demandado y peticionario.

*Número:* CC-97-501          *Resuelto:* 16 de octubre de 1998

*Hilda Rodríguez Forteza* y *Dennis D. Martínez-Colón,* abogado del peticionario; *Maritza González Ortiz,* abogada de la recurrida.

E<small>L</small> J<small>UEZ</small> A<small>SOCIADO</small> S<small>EÑOR</small> C<small>ORRADA</small> D<small>EL</small> R<small>ÍO</small> emitió la opinión del Tribunal.

En el caso de autos debemos determinar si a la luz de lo que dispone el Art. 109 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 385, según enmendado por la Ley Núm. 25 de 16 de febrero de 1995, existe el derecho de los ex cónyuges divorciados por consentimiento mutuo a reclamarse alimentos.

El recurrente Sr. Sergio Cautiño Bird solicita la revocación de la sentencia emitida por el Tribunal de Circuito de Apelaciones la cual, a su vez, revocó una sentencia del Tribunal de Primera Instancia, Sala de San Juan. Mediante dicha sentencia, el tribunal de instancia desestimó la acción a través de la cual la Sra. Josefina Cantellops solicitó alimentos de su ex cónyuge al amparo del Art. 109 del Código Civil, *supra.* Por entender que actuó correctamente el Tribunal de Circuito de Apelaciones al revocar, confirmamos la sentencia recurrida.

I

Josefina Cantellops, recurrida, y Sergio Cautiño Bird, recurrente, contrajeron matrimonio el 27 de febrero de

1958 en el estado de la Florida. Estuvieron casados durante veintitrés (23) años y procrearon dos (2) hijos que al presente son mayores de edad. El 20 de enero de 1981 obtuvieron una sentencia de divorcio, en la cual declararon roto y disuelto el vínculo matrimonial por consentimiento mutuo. Con la petición de divorcio —y tal como lo exige la jurisprudencia— presentaron un documento suscrito por ambos en el que disponían todo lo relacionado con los bienes y las obligaciones gananciales, además de precisar los detalles relacionados con la custodia, patria potestad y pensión alimentaria de una hija que en esos momentos era menor de edad. *Nada se dispuso en cuanto a una pensión alimentaria a favor de la recurrida señora Cantellops.*

El 2 de octubre de 1995, más de catorce (14) años después, la recurrida presentó contra su ex cónyuge una acción para solicitar alimentos al amparo del Art. 109 del Código Civil, *supra*. En su demanda alegó, bajo juramento, que en 1990 su salud se afectó seriamente y que como consecuencia de ello no había podido generar ingresos ni había tenido otros recursos económicos para sufragar sus gastos personales y aquellos que le requería su condición médica. Alegó, además, que ni ella ni su ex cónyuge habían vuelto a casarse y que este último contaba con suficientes recursos económicos para sufragar una pensión alimentaria postdivorcio a su favor de cuatro mil dólares ($4,000) mensuales.

El recurrente contestó la demanda el 19 de abril de 1996, y luego de un período de descubrimiento de prueba, solicitó la desestimación el 18 de junio de 1996. Arguyó que por no tener la recurrida su domicilio en Puerto Rico, a ésta no le aplicaban las disposiciones del Código Civil; que el Art. 109 del Código Civil, *supra*, aplica sólo a aquellos ex cónyuges que obtuvieron el divorcio por las causales establecidas en el Art. 96 de dicho Código, 31 L.P.R.A. sec. 321, dentro de las cuales no se encuentra el divorcio por consentimiento mutuo; que los llamados a la obligación de alimentar a su ex cónyuge son sus parientes legítimos; que la

peticionaria cuenta con suficientes medios para vivir y que el Art. 109, *supra*, según enmendado por la Ley Núm. 25, *supra*, es inconstitucional en su aplicación retroactiva a los hechos que dieron base a la acción de alimentos en su contra. El 16 de julio de 1996 la recurrida presentó el Escrito en Oposición a Moción sobre Desestimación. Por su parte, el 7 de agosto de 1996 el recurrente presentó su Réplica a Escrito en Oposición a Moción de Desestimación.

Tras una vista en la que ambas partes argumentaron sus respectivas posiciones con respecto a la moción de desestimación, el Tribunal de Primera Instancia la acogió y dictó sentencia el 1ro de octubre de 1996, notificada el 9 de octubre de 1996, mediante la cual desestimó la demanda presentada, discutiendo uno sólo de los planteamientos contenidos en la Moción de Desestimación. Determinó que a la recurrida no le asistía el derecho a solicitar alimentos post divorcio porque las partes habían obtenido el divorcio por consentimiento mutuo y no por una de las causales dispuestas por el Art. 96 del Código Civil, *supra*. El Tribunal basó su determinación en la letra del Art. 109, *supra*, según fue enmendado en 1995, la cual según expuso, revela la intención expresa y deliberada del legislador de conceder la acción de alimentos postdivorcio tan sólo a aquellos cónyuges que obtienen el divorcio por cualquiera de las causales consignadas en el Art. 96 del Código Civil, *supra*, dentro de las cuales nunca se ha incluido el divorcio por consentimiento mutuo. Asimismo, el Juez de instancia fundamentó su decisión en el historial legislativo del P. del S. 652 de 16 de febrero de 1994, 12ma Asamblea Legislativa, 5ta Sesión Ordinaria, que finalmente se convirtió en la Ley Núm. 25, *supra*. A esos efectos, indica en su sentencia que el proyecto original no hacía referencia al Art. 96 del Código Civil, *supra*, pero que el proyecto final añadió esa referencia.

Inconforme, la recurrida presentó una petición de *certiorari* ante el Tribunal de Circuito de Apelaciones. El foro

apelativo dictó sentencia el 30 de junio de 1996, archivada en autos la copia de su notificación el 15 de julio de 1997, mediante la cual expidió el auto solicitado y revocó la sentencia recurrida, devolviendo el caso para la continuación de los procedimientos. Determinó que al aprobar la Ley Núm. 25, *supra,* el legislador nunca tuvo la intención de excluir a las personas divorciadas por consentimiento mutuo del derecho a la pensión alimentaria que concede el Art. 109, *supra,* a los ex cónyuges, y que la referencia a las causales sólo tuvo el propósito de eliminar el concepto *culpa* del texto del artículo y derogar, porque ya no tenía consecuencia jurídica alguna, su segundo párrafo, que concedía a ambos cónyuges el derecho a la pensión cuando la causal del divorcio es la separación. El 30 de julio de 1997 el recurrente presentó oportunamente una moción de reconsideración. Ésta fue declarada sin lugar mediante la Resolución de 6 de agosto de 1997, y se archivó en autos una copia de su notificación el 12 de agosto de 1997.

Inconforme con la sentencia del Tribunal de Circuito de Apelaciones, el señor Cautiño recurre ante nos para alegar la comisión del error siguiente:

> Erró el Tr[i]bunal Apelativo al hacer caso omiso a la letra clara del Artículo 109 según enmendado y "legislar" dándole derechos no contemplados por el Legislador a aquellas personas que han obtenido el divorcio por un procedimiento que no está contenido entre las causales del Artículo 96. Solicitud de *certiorari,* pág. 5.

Mediante la Resolución de 7 de noviembre de 1997, notificada el 10 de noviembre de 1997, decidimos revisar mediante *certiorari.* Habiéndose presentado los autos y comparecido ambas partes mediante sus respectivos alegatos, estamos en posición de resolver.

## II

En su petición de *certiorari* el recurrente discute los antecedentes histórico-jurídicos del Art. 109 del Código Civil, *supra*, que indican que hasta 1995 el artículo respondía al principio de culpa; a las expectativas de las partes al amparo del derecho vigente al momento de divorciarse, cuando, según expone el recurrente, entregó a la recurrida prácticamente todo el caudal ganancial, confiando en que el referido Art. 109 no le aplicaba; a la naturaleza del divorcio por consentimiento mutuo como producto de un pacto entre las partes; a la irretroactividad de las leyes en perjuicio de derechos adquiridos, y a principios constitucionales tales como los que prohíben el menoscabo de las obligaciones contractuales.

Por su parte, la parte recurrida sostiene que el consentimiento mutuo es una causal tan propia para obtener el divorcio como las estatutarias, lo cual le da el derecho a cualquiera de los ex cónyuges a solicitar alimentos.

## III

El matrimonio, tal como aparece descrito en el Art. 68 del Código Civil de Puerto Rico, 31 L.P.R.A. sec. 221, es una institución civil que surge en virtud de un contrato civil mediante el cual un hombre y una mujer se comprometen a ser esposos y a cumplir con las responsabilidades y los deberes que les impone la ley. Según surge del Art. 95 del Código Civil, 31 L.P.R.A. sec. 301, para que pueda quedar roto y disuelto el vínculo matrimonial tiene que concurrir cualquiera de las situaciones siguientes: sobrevenir la muerte de cualquiera de los cónyuges; declararse la nulidad del matrimonio, o mediar una sentencia válida de divorcio.

A renglón seguido, el Art. 96 del mismo cuerpo de ley, 31 L.P.R.A. sec. 321, enumera diez (10) de las causales

que al presente existen en nuestra jurisdicción para obtener legalmente el divorcio.([1]) Entre éstas no se encuentra el divorcio por consentimiento mutuo.

La causal de divorcio por consentimiento mutuo encuentra su génesis en el caso *Figueroa Ferrer v. E.L.A.*, 107 D.P.R. 250 (1978). Es decir, es de origen jurisprudencial. En aquel momento, por entender que en nuestra jurisdicción la legislación en materia de divorcio se encontraba rezagada —si la comparábamos con otras— y reconociendo que no siempre el divorcio tenía que tener carácter adversativo; que bien podían dos (2) personas reconocer la necesidad de finalizar su vida en pareja sin necesidad de engañar a los tribunales o exponer ante el escrutinio público cuáles eran sus razones íntimas para finalizar la unión conyugal, este Tribunal reconoció el mutuo consentimiento

---

([1]) Según se desprende del Art. 96 del Código Civil, 31 L.P.R.A. sec. 321, las causas de divorcio son:

"(1) Adulterio de cualquiera de los cónyuges.

"(2) La condena de reclusión de uno de los cónyuges por delito grave, excepto cuando dicho cónyuge se acoja a los beneficios de sentencia suspendida.

"(3) La embriaguez habitual o el uso continuo o excesivo de opio, morfina o cualquier otro narcótico.

"(4) El trato cruel o las injurias graves.

"(5) El abandono de la mujer por su marido o del marido por su mujer, por el término mayor de un (1) año.

"(6) La impotencia absoluta, perpetua e incurable sobrevenida después del matrimonio.

"(7) El conato del marido o de la mujer para corromper a sus hijos o prostituir a sus hijas, y la connivencia en su corrupción o prostitución.

"(8) La propuesta del marido para prostituir a su mujer.

"(9) La separación de ambos cónyuges por un período de tiempo sin interrupción de más de dos (2) años. Probado satisfactoriamente la separación por el expresado tiempo de más de dos (2) años, al dictarse sentencia no se considerará a ninguno de los cónyuges inocente ni culpable.

"(10) La locura incurable de cualquiera de los cónyuges sobrevenida después del matrimonio, por un período de tiempo de más de siete (7) años, cuando impida gravemente la convivencia espiritual de los cónyuges, comprobada satisfactoriamente en juicio por el dictamen de dos peritos médicos; Disponiéndose, que en tales casos la corte nombrará un defensor judicial al cónyuge loco para que lo represente en el juicio. El cónyuge demandante vendrá obligado a proteger y satisfacer las necesidades del cónyuge loco en proporción a su condición y medios de fortuna, mientras sea necesaria para su subsistencia; Disponiéndose, además, que esta obligación en ningún momento ha de ser menos de dos quintas (2/5) partes del ingreso bruto por sueldos o salarios o entradas de cualquier otra clase que tuviere el cónyuge demandante."

como causal de divorcio. Este Tribunal, por voz de su Juez Presidente Señor Trías Monge, sentenció que:

> Las Secs. 1 y 8 del Art. II de la Constitución no permiten limitar los fundamentos del divorcio en Puerto Rico dentro de las circunstancias de este caso a causales derivadas del concepto de la culpa. Tales disposiciones constitucionales se basan en principios con aspiración de universalidad y la realidad predominante en el mundo de hoy, como hemos visto, es la aceptación del divorcio sin culpa. *La Constitución del Estado Libre Asociado ampara el derecho de los puertorriqueños a proteger su dignidad y vida íntima en los procedimientos de divorcio mediante la expresión de la mutua decisión de divorciarse o la consignación de ruptura irreparable de los nexos de convivencia matrimonial.* No tienen que mediar partes adversas; puede hacerse por petición conjunta de los cónyuges. No tiene que existir una parte inocente y otra culpable. La esencia del derecho estriba en la abolición de la noción de culpa. No necesitan las partes expresar las razones de su decisión si a su juicio ello conlleva la revelación indeseada de penosos detalles de su vida íntima. No puede forzarse a las partes a vivir ininterrumpidamente separados por dos años como único medio de ejercer su derecho a la intimidad y la inviolabilidad de su dignidad humana. Esta es una causal legítima para quienes deseen invocarla pero, según hemos advertido, ella representa tan solo una etapa intermedia, primitiva e incompleta de la evolución del divorcio culposo al divorcio sin culpa. (Énfasis suplido.) *Figueroa Ferrer v. E.L.A.*, supra, pág. 276.

Se reconoció, pues, a que a partir de ese momento, en nuestra jurisdicción sería causa válida y legítima para obtener el divorcio —porque así lo exigen el derecho a la intimidad y el derecho que tienen las personas a defender la inviolabilidad de su dignidad— la mutua decisión de los cónyuges de divorciarse.

■   No obstante, aún reconociendo que se trataba de un asunto esencialmente íntimo, este Tribunal reconoció la necesidad de que el Estado preservara su obligación de velar por que el divorcio no fuera consecuencia de algún tipo de coacción o de la irreflexión. En aras de ese objetivo se estableció la necesidad de incluir las estipulaciones necesarias que dispusieran de asuntos tan delicados como la

división de los bienes gananciales y el sustento de las partes. *Figueroa Ferrer v. E.L.A.*, supra, págs. 276–277. En consecuencia y como corolario de lo allí resuelto, se declaró inconstitucional el Art. 97 del Código Civil, 31 L.P.R.A. sec. 331 —disposición legal que prohibía la aquiescencia entre los cónyuges a los fines de obtener el divorcio— y otras disposiciones opuestas a los principios consignados en la opinión.

## IV

Teniendo este trasfondo como punto de partida, debemos determinar si el Art. 109 del Código Civil, *supra*, según enmendado por la Ley Núm. 25, *supra*, veda el derecho que puedan tener los ex cónyuges a reclamarse alimentos entre sí cuando ha mediado una sentencia de divorcio por consentimiento mutuo.

Los alimentos entre ex cónyuges están regulados por el Art. 109 del Código Civil, *supra*, según enmendado en 1995. A esos efectos, éste dispone que:

> Si decretado el divorcio por cualesquiera de las causales que establece [el Art. 96], cualesquiera de los ex cónyuges no cuenta con suficientes medios para vivir, el Tribunal Superior podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del otro cónyuge.
>
> El tribunal concederá los alimentos a que se refiere el párrafo anterior, teniendo en cuenta, entre otras, las siguientes circunstancias:
>
> (a) Los acuerdos a que hubiesen llegado los ex cónyuges.
>
> (b) La edad y el estado de salud.
>
> (c) La cualificación profesional y las probabilidades de acceso a un empleo.
>
> (d) La dedicación pasada y futura a la familia.
>
> (e) La colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge.
>
> (f) La duración del matrimonio y de la convivencia conyugal.
>
> (g) El caudal y medios económicos y las necesidades de uno y otro cónyuge.
>
> (h) Cualquier otro factor que considere apropiado dentro de las circunstancias del caso.

Fijada la pensión alimenticia, el juez podrá modificarla por alteraciones sustanciales en la situación, los ingresos y la fortuna de uno u otro ex cónyuge. La pensión será revocada mediante resolución judicial si llegase a hacerse innecesaria, o por contraer el cónyuge divorciado acreedor a la pensión nuevo matrimonio o viviese en público concubinato.(²)

■ Es principio medular en nuestra jurisdicción que la institución de alimentos tiene un carácter dinámico y está revestida del mayor interés público. *González v. Suárez Milán*, 131 D.P.R. 296 (1992). Cónsono con ese principio hemos requerido que al interpretarse el Art. 109, *supra*, se haga flexiblemente "sin ceñirse a conceptos rígidos que impidan o dificulten lograr equitativamente los propósitos importantes que informan la institución de alimentos en nuestro ordenamiento jurídico". *González v. Suárez Milán*, supra, pág. 301.

■ El derecho a solicitar y recibir alimentos es de carácter vitalicio e imprescriptible. En *Suria v. Fernández Negrón*, 101 D.P.R. 316, 320 (1973), distinguimos entre el término de tiempo que tenía la mujer para solicitar alimentos a su ex cónyuge y el período que tenía para iniciar una acción para cobrar pensiones alimentarias ya vencidas. Concluimos que por depender estrictamente del criterio de la necesidad, la acción para solicitar alimentos no prescribía. Distinto es el caso cuando se trata de pensiones ya vencidas. Razonamos allí que el término de prescripción de (5) años le aplica a esta segunda circunstancia porque "mal podía justificarse la necesidad" si aun habiéndose decretado una pensión nada había hecho la mujer por cobrarla.

■ Asimismo, anteriormente hemos sostenido que

---

(²) Conviene señalar que, en su versión anterior a 1995, el Art. 109 de nuestro Código Civil, 31 L.P.R.A. sec. 385 —fuente estatutaria de donde dimana el derecho de alimentos entre ex cónyuges— tuvo su génesis en el Art. 177 de Código Civil de 1902, y este último proviene a su vez del Art. 160 del Código Civil de Louisiana, LSA–C.C. Art. 160 (West's 1993). *González v. Suárez Milán*, 131 D.P.R. 296 (1992); *Magee v. Alberro*, 126 D.P.R. 228 (1990); *Milán Rodríguez v. Muñoz*, 110 D.P.R. 610 (1981).

los dictámenes sobre las pensiones alimentarias siempre están sujetos a modificación, según varíe sustancialmente de un lado la capacidad del alimentante para proveer alimentos o del otro la necesidad del alimentista. *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61 (1987); *Valencia, Ex parte*, 116 D.P.R. 909 (1986). Los criterios de necesidad y de capacidad son los factores determinantes al momento de establecer si existe el derecho a recibir alimentos. Los alimentos "responden a una necesidad imperiosa, sin la cual no serían exigibles, y la ley supone que no existe necesidad mientras no se reclaman judicialmente". *Suria v. Fernández Negrón*, supra, pág. 318.

 Tal como fue originalmente redactado el Art. 109, *supra*, éste proveía que sólo la mujer, cuando se dieran los requisitos que allí se disponían, era acreedora de tal derecho, siendo en consecuencia en el ex esposo sobre quien recaía la responsabilidad de alimentar.[3] Sin embargo, en *Milán Rodríguez v. Muñoz*, supra, este Tribunal por voz del Juez Asociado Señor Negrón García validó el interés legislativo de que no sólo durante la vigencia del matrimonio, sino aún después de disuelto éste, se mantuviera —aunque en estado latente— la obligación recíproca entre los ex cónyuges de prestarse alimentos. En consecuencia concluimos que tal disposición de ley debía entenderse extensiva

---

[3] El anterior Art. 109, antes de ser enmendado en 1995 por la Ley Núm. 25, *supra*, disponía lo siguiente:

"Si la mujer que ha obtenido el divorcio no cuenta con suficientes medios para vivir, el Tribunal Superior podrá asignarle alimentos discrecionales de los ingresos, rentas, sueldos o bienes que sean de la propiedad del marido, sin que pueda exceder la pensión alimenticia de la cuarta parte de los ingresos, rentas o sueldos percibidos.

"Si el divorcio se ha decretado por la causal de separación, la mujer podrá solicitar los alimentos a que se refiere el párrafo anterior, si no cuenta con medios suficientes para vivir.

"La pensión alimenticia será revocada si llegase a hacerse innecesaria, o cuando la mujer divorciada contrajese segundo matrimonio o cuando viva en público concubinato u observare vida licenciosa." 31 L.P.R.A. ant. sec. 385. Véanse, además: *Milán Rodríguez v. Muñoz*, supra; *Suria v. Fernández Negrón*, supra; *Meléndez v. Tribl. Superior*, 77 D.P.R. 535 (1954); *Sacarello v. Rubio*, 44 D.P.R. 883 (1933); *Puigdollers v. Monroig*, 26 D.P.R. 310 (1918); *Morales v. Rivera*, 8 D.P.R. 463 (1905).

—siempre que lo justificara la necesidad del alimentista— tanto al hombre como a la mujer.([4])

El Art. 109 original, *supra*, además, disponía que sólo el ex cónyuge "que hubiera obtenido el divorcio" tendría el derecho a recibir alimentos. Ello implicaba que sólo el cónyuge inocente se beneficiaría de la pensión de la que en su día pudiera ser acreedor. Asimismo, de la lectura de este artículo surgía la existencia de una cantidad máxima que ha de ser concedida al cónyuge necesitado.

Mediante la Ley Núm. 25, *supra*, se extendió al hombre el derecho a recibir alimentos después de haberse decretado la disolución del matrimonio mediante sentencia de divorcio, situación que ya había sido presentada por este Tribunal en *Milán Rodríguez v. Muñoz*, supra; se eliminó el concepto *culpa* de la letra de la disposición legal y se eliminó la cuantía máxima que sería concedida. La nueva ley tuvo el propósito adicional de incorporar al citado Art. 109, ocho (8) circunstancias que el juzgador debe examinar al determinar el monto de la pensión.([5])

Atendidos los propósitos de la Ley Núm. 25, *supra*, nos preguntamos, ¿quería el legislador excluir a las personas divorciadas por consentimiento mutuo del derecho a la pensión postdivorcio cuando aprobó los cambios al citado Art. 109? Concluimos que no.

En aras de conocer la intención del legislador al enmen-

---

([4]) El Tribunal, luego de someter a un escrutinio estricto la clasificación por sexo hecha en el Art. 109, *supra*, reconoció el carácter discriminatorio de éste; sin embargo, reconoció también el deber de los tribunales de salvar la constitucionalidad de las leyes, haciendo interpretaciones dirigidas a la consecución de los principios en ellas contenidos. En *Milán Rodríguez v. Muñoz*, supra, pág. 618, dijimos:

"En materia de hermenéutica constitucional y ante estatutos que adolecen de inconstitucionalidad por sub-inclusión, se reconoce la facultad de los tribunales de extender los beneficios estatutarios a aquellos grupos o clases excluidos." (Citas omitidas.)

([5]) Dichas circunstancias se importaron de España, a través de la citada Ley Núm. 25, *supra*. Allá el Art. 97 del Código Civil —disposición legal del cual se tomaron— regula la pensión postdivorcio. La diferencia fundamental entre una y la otra es que la disposición del Código Civil español tiene un carácter de pensión compensatoria, mientras que en la nuestra su carácter es eminentemente alimentario. Para una discusión más detallada, véase R. Serrano Geyls, *La nueva ley de pensiones alimentarias post-divorcio*, 30 Rev. Jur. U.I.P.R. 97 (1996).

dar el Art. 109, *supra*, hemos examinado minuciosamente el historial legislativo del P. del S. 652, génesis de la Ley Núm. 25, *supra*. Se desprende del Informe de la Comisión de Gobierno al pleno del Senado de 20 de junio de 1994, que aunque originalmente la intención era enmendar el artículo a los únicos efectos de extender al hombre el derecho a recibir alimentos después del divorcio, el alcance del proyecto se amplió por las recomendaciones del Secretario de Justicia. Entre las recomendaciones que éste le hizo a la Asamblea Legislativa, y pertinente al caso de autos, se incluyó la de eliminar cualquier referencia al concepto *culpa*, concepto que había estado vinculado al divorcio desde que éste se instituyó en Puerto Rico. La justificación para su recomendación la encontró el Secretario de Justicia en la tendencia de la propia Asamblea Legislativa de ir eliminando el concepto *culpa* en algunas de nuestras instituciones jurídicas.[6] En el caso particular de la pensión alimentaria entre ex cónyuges, con la adopción de la recomendación, se alteró el lenguaje del artículo, para sustituir la frase: "si uno de los cónyuges que ha obtenido el divorcio" por la de: "si decretado el divorcio por cualquiera de las causales que establece el Artículo 96 de este Código, *cualquiera de los ex-cónyuges*". (Énfasis suplido.) Apéndice, pág. 70 esc. 13. Es decir, se extendió literalmente el derecho del hombre a solicitar alimentos cuando así lo necesitara y se eliminó el elemento culposo que hasta ese momento había permeado la interpretación del Art. 109, *supra*. No surge del historial legislativo que el propósito de dicha enmienda fuese excluir el derecho a pedir alimentos de ex cónyuges cuando la causal para el divorcio fuese el consentimiento mutuo.

El caso de autos trata de un matrimonio que obtuvo el

---

[6] Véase a modo de ejemplo la Ley Núm. 101 de 2 de junio de 1976, Leyes de Puerto Rico, págs. 316–318. Ésta eliminó la designación automática de la mujer como cónyuge inocente cuando se produce un divorcio por la causal de separación de acuerdo con el Art. 96(9) del Código Civil, 31 L.P.R.A. sec. 321(9). Además, constituyó esta causal como una no culposa.

divorcio por consentimiento mutuo. Como parte de la solicitud de divorcio los peticionarios, luego de confirmar que habían recibido la orientación adecuada y que no había mediado ningún tipo de coacción, dispusieron todo lo relacionado a los aspectos fundamentales de la relación con su hija menor. A esos efectos expusieron que "en forma inteligente han logrado conformar sus deseos y dejar para el futuro reglamentado [sic] lo concerniente a *alimentos, custodia y patria potestad de la menor antes mencionada*, relaciones paterno-filiales, residencia de la esposa y finalmente, lo referente a bienes gananciales". (Énfasis suplido.)[7] Con dicha petición presentaron un Acuerdo sobre División de Bienes Gananciales y otros Fines. De la lectura de dicho documento no se desprende acuerdo alguno sobre la pensión alimentaria postdivorcio.

Catorce (14) años más tarde, la recurrida solicitó de su ex cónyuge, el recurrente, una pensión alimentaria y adujo que hacía unos años venía confrontando problemas de salud, por lo que no había podido generar ingresos y sostenerse económicamente. Alegó, asimismo, que su ex esposo contaba con suficientes bienes para pagar la pensión alimentaria, además de que ninguno de los dos (2) había vuelto a contraer segundas nupcias.

El recurrente pretende que interpretemos que el lenguaje utilizado en la petición de divorcio por consentimiento mutuo tuvo la intención de regular lo relacionado con los alimentos postdivorcio, constituyéndose en un contrato de transacción con carácter de cosa juzgada. No nos persuade. Una lectura simple de la petición de divorcio es suficiente para descubrir que los peticionarios nunca tuvieron la intención de regular tal aspecto de sus relaciones. Más que regular lo relacionado con los alimentos entre los ex cónyuges, lo que se pretendía era determinar la pensión alimentaria de la entonces todavía hija menor del

---

[7] Petición de divorcio de 29 de agosto de 1980, Apéndice, pág. 1.

matrimonio. Aun suponiendo que se hubiera pretendido pactar sobre alimentos futuros de ex cónyuges, por estar la institución de alimentos revestida del mayor interés público, cualquier acuerdo que se hubiere efectuado no tiene ni puede tener un carácter invariable o constituir una renuncia a derechos futuros de alimentación.[8]

Sabido es que en nuestra jurisdicción tales estipulaciones o acuerdos no tienen el carácter de cosa juzgada. Véanse: *Magee v. Alberro*, 126 D.P.R. 228 (1990); *Negrón y Bonilla, Ex parte*, supra; *Fenning v. Tribunal Superior*, 96 D.P.R. 615 (1968). No obstante, no quiere ello decir que ante cualquier cambio variarán las estipulaciones previamente hechas; tienen que concurrir cambios sustanciales en las necesidades del alimentista o los recursos económicos del alimentante. Íd.

Así las cosas, y a base de lo previamente expuesto, entendemos que al sustituir la frase "uno de los cónyuges que ha obtenido el divorcio" por "decretado el divorcio por cualquiera de las causales que establece el Artículo 96" el legislador nunca tuvo la intención de excluir del alcance del Art. 109, *supra*, el divorcio por consentimiento mutuo.[9] Al contrario, lo que pretendió en todo momento fue eliminar el concepto *culpa* y el discrimen por sexo. Por lo tanto, en vista de lo anterior, concluimos que una vez disuelto el matrimonio —por cualquiera de las causales, incluyendo el consentimiento mutuo— nace un derecho a pensión alimentaria post divorcio cuando ello se justifique, a base de los criterios de necesidad y capacidad. Determinar lo contrario daría lugar a una interpretación inflexible

---

[8] Específicamente, el Art. 1713 de nuestro Código Civil, 31 L.P.R.A. sec. 4825, prohíbe que las personas puedan transigir sobre su estado civil, cuestiones matrimoniales o alimentos futuros. Véanse, además: *Rubio Sacarello v. Roig*, 84 D.P.R. 344, 350 (1962); *Benítez v. Benítez*, 64 D.P.R. 756, 759 (1945).

[9] No olvidemos que " '[l]as leyes deben interpretarse y aplicarse a tono con el propósito social que las inspira [y no deben desvincularse] del problema humano cuya solución persiguen' ". *Riley v. Rodríguez Pacheco*, 124 D.P.R. 733, 737 (1989), citando a *Morales v. Adm. Sistemas de Retiro*, 123 D.P.R. 589, 595 (1989).

del Art. 109, *supra*, sin que se nos haya dado razón válida alguna para tan cruda diferenciación.([10])

No podemos suponer, como lo hace el recurrente, que el legislador tuvo la intención de excluir la causal de divorcio por consentimiento mutuo de los beneficios del Art. 109 del Código Civil, *supra*, al enmendarlo en 1995. Ello significaría imputarle a éste una acción inconstitucional: degradar una causal que dimana del derecho constitucional a la intimidad y, además, un intento de menoscabar el dictamen de este Foro al interpretar la Constitución en el caso *Figueroa Ferrer v. E.L.A.*, supra.

Procedería, si concluyésemos que el propósito fue excluyente, extender los beneficios estatutarios al grupo excluido, es decir, a los ex cónyuges que se han divorciado por la causal de consentimiento mutuo, que demuestren la necesidad de alimentos y la capacidad del otro o la otra para proveerlos, aplicando los principios de hermenéutica constitucional que enunciamos en *Milán Rodríguez v. Muñoz*, supra.([11]) No obstante, ello resulta innecesario a la luz de la interpretación no excluyente que hemos hecho de la Ley Núm. 25, *supra*, enmendatoria del Art. 109.

No vemos ningún fundamento por el cual el o la ex cónyuge con necesidad no pueda reclamar alimentos por el hecho de haberse divorciado mediante el procedimiento de mutuo consentimiento. En consecuencia, siendo este derecho susceptible de invocarse en cualquier momento con posterioridad al divorcio —por su carácter vitalicio e imprescriptible— bien podía la señora Cantellops, o aun el señor Cautiño, ser acreedores del derecho a una pensión alimentaria postdivorcio, de cumplir con los criterios aplicables.

En la eventualidad de que el Tribunal de Primera Instancia entienda que en el caso de autos procede la pensión alimentaria, los argumentos esgrimidos por el peticionario

---

([10]) Véase *Milán Rodríguez v. Muñoz*, supra, pág. 617.

([11]) Véase el esc. 9.

en relación con el tiempo transcurrido desde la sentencia de divorcio, así como los acuerdos particulares en la división de los bienes de la sociedad legal de gananciales contenidos en la estipulación, podrán ser tomados en cuenta junto a las demás consideraciones pertinentes, según lo dispone el Art. 109, *supra,* para determinar el monto de la pensión alimentaria.

Por los fundamentos antes expuestos, *se confirma la sentencia del Tribunal de Circuito de Apelaciones y se devuelven los autos al Tribunal de Primera Instancia para la continuación de los procedimientos en conformidad con lo aquí expresado.*

El Juez Asociado Señor Rebollo López no interviene.