Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| | | |
|---|---|---|
| AWILDA QUIÑONES VÉLEZ<br><br>Demandante - Apelante<br><br>v.<br><br>JORGE RICARDO VÁZQUEZ ORTIZ<br><br>Demandado - Apelado | TA2025AP00380 | Apelación procedente del Tribunal de Primera Instancia, Sala de Ponce<br><br>Civil núm.: PO2021RF00260<br><br>Sobre: Divorcio/Alimentos |

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 23 de febrero de 2026.

Luego de una vista evidenciaria, el Tribunal de Primera Instancia ("TPI") relevó a una parte de la pensión excónyuge que se le había impuesto al divorciarse. Según se explica en detalle a continuación, concluimos que erró el TPI, pues hubo ausencia total de prueba en cuanto a algún cambio sustancial en las necesidades de la alimentista o en la capacidad del alimentante, en comparación con las circunstancias de las partes al divorciarse tres años antes.

I.

La Sa. Awilda Quiñones Vélez (la "Exesposa" o la "Apelante") y el Sr. Jorge Ricardo Vázquez Ortiz (el "Exesposo" o el "Apelado") contrajeron matrimonio el 13 de marzo de 2003. El 8 de **junio de 2021**, se divorciaron por la causal de ruptura irreparable.

En lo pertinente, el TPI le impuso al Exesposo el pago de $500.00 mensuales a favor de la Apelante, por concepto de pensión (la "Pensión"). La Pensión fue luego reducida a $449.09 mensuales. Además, el TPI le impuso al Apelado el pago de una pensión

alimentaria a favor de la hija menor de las partes ascendente a $1,704.35 mensuales.

Menos de tres años después, en **abril de 2024**, el Exesposo presentó una *Moción Solicitando (sic) Relevo Pensión Alimentaria y Excónyuge* (la "Moción"). En cuanto a su hija, expuso que esta tenía veinte (20) años, trabajaba en el Castillo Serrallés y tenía "vida propia". A su vez, en cuanto a la Exesposa, alegó que está también trabajaba en el Castillo Serrallés y que, al ejercer una profesión u oficio, se extingue la obligación de alimentar.

La Apelante se opuso a la Moción; indicó que la hija de las partes trabajaba, a tiempo parcial, en el Castillo Serrallés desde antes del divorcio de sus padres. De todas formas, aclaró que ella había dejado ese trabajo con el fin de realizar un internado en el estado de la Florida y que, culminado este, se había matriculado para proseguir estudios universitarios en Puerto Rico.

En cuanto a la solicitud de relevo de la Pensión, la Exesposa planteó que, desde antes del divorcio, ella trabajaba, lo cual era conocido por el Apelado y por el TPI al fijarse la Pensión. Explicó que, durante la vista de divorcio, se presentó prueba de su ingreso y de que el mismo no era suficiente para cubrir sus gastos y mantener el estándar de vida que el Exesposo le proveyó mientras estuvieron casados.

Transcurridos algunos incidentes procesales, el 13 de febrero de 2025 se celebró una vista evidenciaria. Surge de la *Minuta* correspondiente que, según el TPI, "la alimentista comenzó a trabajar en mantenimiento en el Castillo Serrallés y posteriormente hubo un cambio de funciones y está trabajando en el ámbito de administración".[1] La Exesposa objetó que se tomara en consideración una certificación de empleo presentada por el

---

[1] Véase, *Minuta* de vista del 13 de febrero de 2025, pág. 1, Entrada 174 de SUMAC.

Exesposo sin haber sido autenticada y admitida en evidencia.[2]  Al TPI le pareció suficiente que el documento se hubiese presentado previamente por medio de SUMAC y tomó conocimiento judicial.[3] Luego paralizó la vista y optó por citar al director de recursos humanos del Castillo Serrallés para poder aquilatar la evidencia.[4]

El 30 de junio, el TPI continuó la vista evidenciaria.  En cuanto a la citación al director de recursos humanos del Castillo Serrallés, el TPI indicó que no se hizo, pero que admitía en evidencia la certificación de empleo de la Exesposa sin autenticar.[5]  Luego se retractó e indicó que atendería dicho asunto posteriormente.[6]

Mediante un dictamen notificado el 21 de julio (la "Sentencia"), el TPI dejó sin efecto la Pensión.  Razonó que había ocurrido un cambio sustancial en el ámbito laboral de la Exesposa debido a que antes trabajaba en el área de mantenimiento y luego "cambió de empleo a uno gerencial, en la misma entidad, donde se le pagaba más".[7]

Inconforme, el 4 de agosto, la Exesposa solicitó la reconsideración de la Sentencia, lo cual fue denegado por el TPI mediante un dictamen notificado el 26 de agosto.

Inconforme, el 25 de septiembre, la Apelante interpuso el recurso que nos ocupa; formuló los siguientes cinco señalamientos de error:

> Primer Error
> Erró el TPI al declarar No Ha Lugar la solicitud de desestimación presentada el 29 de octubre de 2024, mediante la Resolución notificada el 21 de julio de 2025, cuando la petición de relevo de pensión excónyuge no aducía que circunstancias de la apelante habían cambiado que merecía que la pensión excónyuge fuese revocada o modificada, razón por la cual, nos justificaba la concesión de un remedio.  Artículo 466, *infra*.

---

[2] *Íd.*
[3] *Íd.*
[4] *Íd.*
[5] Véase, *Minuta* de la vista de 30 de junio de 2025, pág. 1, Entrada 195 de SUMAC.
[6] *Íd.*
[7] Véase, *Resolución* de 21 de julio de 2025, pág. 2, Entrada 208 de SUMAC.

Segundo Error

Erró el TPI al declarar no ha lugar la peticiones de "non-suit" presentadas por la apelante en las vistas celebradas y al paralizar la primera vista porque entendía que para dirimir la controversia ante su consideración necesitaba saber si hubo un cambio en las circunstancias en cuanto al empleo de la alimentista, cuando la parte apelada no adujo en su petición de relevo de pensión excónyuge que las circunstancias de la apelante habían cambiado, ni presentó prueba a esos efectos. Artículo 466, *infra*.

Tercer Error

Erró el TPI al determinar que la apelante testificó que cuando se concedió la pensión excónyuge la misma laboraba en el Castillo Serrallés en el área de mantenimiento; y con posterioridad, cambió de empleo a uno gerencial, en la misma entidad, donde se le pagaba más, cuando esta testificó que cuando comenzó a trabajar en el año 2019 en mantenimiento, se le pagaba el salario mínimo estatal, y cuando se le nombró al puesto de coordinadora de eventos en el año 2024 su salarió había aumentado anterior a ser nombrada a dicho puesto gracias al aumento del salario mínimo estatal establecido por la Ley 47 del 2021.

Cuarto Error

Erró el TPI al relevar al apelado del pago de la pensión excónyuge y al no considerar lo testificado por la apelante para aumentar dicha pensión a favor de esta, a los efectos de quien pagaba las necesidades de esa cuando las partes estaban casad[a]s (sic); que el apelado le pidió a esta que no trabajara; los vicios de juegos de videos y de uso cannabis del apelado; que lo anterior resultó en que la apelante tuviera que trabajar a pesar de la oposición del apelado; los gastos mensuales de la apelante; el salario inicial de esta cuando comenzó a trabajar y su salario en el año 2025.

Quinto Error

Erró el TPI al relevar al apelado del pago de la pensión excónyuge y al no determinar que la pensión excónyuge a favor de la apelante debía ser mayor a $500.00 mensuales para cubrir las necesidades de esta ya que el salario que esta recibe trabajando en Castillo Serrallés no es suficiente para cubrir sus necesidades.

El 3 de octubre, la Apelante instó una *Moción en Auxilio de Jurisdicción* y un *Método de Reproducción Prueba Oral*. El 6 de octubre, dictamos una *Resolución* en la que ordenamos la presentación de una transcripción de la prueba oral estipulada. Además, le concedimos al Apelado un término hasta el 9 de octubre para consignar su postura en cuanto a la solicitud en auxilio de nuestra jurisdicción. El 8 de octubre, el Apelado solicitó una

prórroga.  Mediante una *Resolución* de esa misma fecha, denegamos la referida moción de prórroga y declaramos con lugar la solicitud de auxilio de la Apelante.  En consecuencia, ordenamos al Apelado que reanudara inmediatamente el pago de la Pensión.

Luego de algunos incidentes procesales, a mediados de diciembre, la Apelante sometió la transcripción de la prueba oral y, el 20 de enero de 2026, el Apelado presentó un alegato en oposición. Resolvemos.

II.

Los alimentos entre excónyuges están reglamentados por el Artículo 466 del Código Civil, 31 LPRA sec. 6813, el cual establece, en lo pertinente, lo siguiente:

> El tribunal puede asignar al excónyuge **que no cuenta con medios suficientes para vivir** una pensión alimentaria que provenga de los ingresos o de los bienes del otro excónyuge, por un plazo determinado o **hasta que el alimentista pueda valerse por sí mismo o adquiera medios adecuados y suficientes para su propio sustento**.
> [...]

Al establecer si procede una pensión de excónyuge, el tribunal debe evaluar los ocho factores dispuestos en el precitado Artículo 466 del Código Civil, *supra.*  Los referidos criterios son los siguientes:

> Para fijar la cuantía de la pensión alimentaria, el tribunal puede considerar, entre otros factores pertinentes, las siguientes circunstancias respecto a ambos excónyuges:
> (a) los acuerdos que hayan adoptado sobre el particular;
> (b) la edad y el estado de salud física y mental;
> (c) **la preparación académica, vocacional o profesional y las probabilidades de acceso a un empleo**;
> (d) las responsabilidades que conservan sobre el cuido de otros miembros de la familia;
> (e) la colaboración con su trabajo en las actividades mercantiles, industriales o profesionales del otro cónyuge;
> (f) **la duración del matrimonio y de la convivencia conyugal**;
> (g) **el caudal y medios económicos y las necesidades de cada cónyuge**; y

(h) cualquier otro factor que considere apropiado según las circunstancias del caso. Véase, además, *Díaz v. Alcalá,* 140 DPR 959, 977-978 (1996).

Destacamos que las pensiones alimentarias de excónyuges están investidas del mayor interés público. *Cortés Pagán v. González Colón,* 184 DPR 807, 814 (2012). Además, los "dictámenes sobre pensiones alimentarias de excónyuges siempre están sujetos a modificación, según cambie **sustancialmente** la capacidad del alimentante para proveer alimentos o la necesidad del alimentista". *Íd.*; *Cantellops v. Cautiño,* 146 DPR 791, 806 (1998). De acuerdo con ello, el Artículo 467 del Código Civil, 31 LPRA sec. 6814, establece lo siguiente:

> A petición de parte, el tribunal puede modificar o revocar la pensión alimentaria antes de su vencimiento, **si surgen cambios significativos o extraordinarios en** la situación personal o económica de cualquiera de los excónyuges. (Énfasis provisto).

Por otro lado, el derecho a la pensión alimentaria del excónyuge se extingue al cesar la necesidad del alimentista, por su muerte o por la del alimentante, por el vencimiento del plazo establecido, por contraer el alimentista nuevo matrimonio o por haber el alimentista establecido una relación de convivencia con otra persona. Artículo 468 del Código Civil, 31 LPRA sec. 6815.

III.

Al ejercer nuestra función revisora, le debemos gran respeto y deferencia a las determinaciones de hechos que hace el juzgador de hechos, en particular a aquellas que descansan sobre su apreciación de la credibilidad de testigos. *Dávila Nieves v. Meléndez Marín,* 187 DPR 750, 770-772 (2013); *González Hernández v. González Hernández,* 181 DPR 746, 776-777 (2011). Es dicho juzgador (en este caso, el TPI) quien está en mejor posición para evaluar la prueba, ya que tiene la oportunidad de escuchar a los testigos mientras declaran y de observar su comportamiento. *Íd*; *Suárez Cáceres v. Com. Estatal Elecciones,* 176 DPR 31, 67 (2009);

*López v. Dr. Cañizares*, 163 DPR 119, 135 (2004); *E.L.A. v. S.L.G. Negrón-Rodríguez*, 184 DPR 464, 486 (2012); *Serrano Muñoz v. Auxilio Mutuo*, 171 DPR 717, 741 (2007). Los foros apelativos solo podemos intervenir con la apreciación de la prueba oral que haga el juzgador de los hechos cuando éste haya actuado con pasión, prejuicio o parcialidad, o haya incurrido en un claro error al aquilatarla. *Dávila Nieves*, 187 DPR a la pág. 771; *González Hernández*, 181 DPR a las págs. 776-777; *Rivera Figueroa v. The Fuller Brush Co.*, 180 DPR 894, 916 (2011); *Meléndez v. Caribbean Int'l. News*, 151 DPR 649, 664 (2000).

Claro está, una apreciación errónea de la prueba no tiene credenciales de inmunidad frente a la función revisora de un tribunal apelativo. *Rivera Pérez v. Cruz Corchado*, 119 DPR 8, 14 (1987). Se podrá intervenir cuando la apreciación de la prueba no represente el balance más racional, justiciero y jurídico de la totalidad de la prueba y cuando la apreciación de esta se distancia "de la realidad fáctica o sea inherentemente imposible o increíble". *Pueblo v. Santiago et al.*, 176 DPR 133, 148 (2009). Se exceptúan de la regla de deferencia las determinaciones de hechos que se apoyan exclusivamente en prueba documental o pericial, ya que los tribunales apelativos están en idéntica posición que el tribunal inferior al examinar ese tipo de prueba. *González Hernández*, 181 DPR a la pág. 777.

IV.

Concluimos que el récord está totalmente huérfano de prueba que pudiese sustentar la aparente conclusión del TPI a los efectos de que hubo un cambio sustancial en las circunstancias de las partes. Puesto de otra forma, no se trata de un error del TPI en la apreciación de la prueba, sino de un error de derecho al concluirse que un aumento en el salario mínimo establecido por ley, y otro aumento de 50 centavos por hora otorgado a la Apelante, constituía

el tipo de cambio sustancial que ameritaba relevar al Apelado de la Pensión. Veamos.

Al momento de decretarse el divorcio en el 2021 y, por ende, de imponerse la Pensión, la Apelada **ya devengaba el salario mínimo por sus labores de mantenimiento**.[8] Subsiguientemente, la Apelante pasó a realizar labores de decoración **y continuó devengando el salario mínimo**.[9] Por razón de que, por ley, se aumentó el salario mínimo local a $10.50 por hora, la Apelante comenzó a recibir dicha suma.[10] Es decir, la Apelante **continuó trabajando por el salario mínimo actualizado**. La Apelante luego recibió un **aumento de 50¢** por hora por encima del salario mínimo, para un total actual de **$11.00 por hora**.[11] A todas luces, ello no equivale a un cambio sustancial en la situación económica de la Apelante, especialmente tomando en consideración el costo de atender sus necesidades básicas.

En efecto, de acuerdo con el último estado de cuenta presentado ante el TPI, entre diciembre de 2024 y enero de 2025, se reflejaba el salario de $11.00 por hora,[12] y la Apelante devengó un salario neto bisemanal de $637.17 para un total de $1,380.54 mensuales.[13] Por otro lado, sus gastos mensuales aproximados totalizaron entre $2,241.00 y $2,647.97.[14]

Contrario a lo que sugiere el Apelado, el aumento en el salario mínimo no tuvo un impacto significativo sobre la situación financiera de la Apelante. Asimismo, se desprende de la transcripción de la prueba que la Apelante carece de estudios

---

[8] TPO, vista del 23 de junio de 2025, pág. 165, líneas 1-3.
[9] *Íd.*, pág. 165, línea 4-10.
[10] *Íd.*, pág. 132, líneas 20-25 y pág. 133, líneas 1-22, pág. 165, líneas 11-25.
[11] *Íd.*, pág. 134, líneas 1-9 y pág. 166 líneas 1-3.
[12] *Íd.*, pág. 166, líneas 4-11.
[13] *Íd.*, pág. 92 líneas 1-17.
[14] TPO, vista del 23 de junio de 2025, pág. 93, líneas 14-18 y pág. 98, líneas 10-13.

superiores[15] y que el propio Exesposo desalentaba que la Apelante trabajara fuera del hogar mientras estuvieron casados.[16]

Por su parte, resaltamos que la situación económica de la Apelada contrasta diametralmente con la posición económica del Apelado, quien recibe más de $8,000.00 netos mensuales[17] por concepto de retiro, seguro social y pensión de veteranos. Además, en momento alguno el Apelado ha planteado que no tenga la capacidad para pagar la Pensión.

Como se sabe, la obtención de alimentos entre excónyuges está supeditada a la existencia de una situación de necesidad económica. Véanse, por ejemplo, *Toppel v. Toppel*, 114 DPR 16 (1983). *Soto López v. Colón Meléndez,* 143 DPR 282 (1997). En el caso de autos, la compensación de la Apelante ($11.00 por hora, o cincuenta centavos por encima del salario mínimo actual) denota una situación de necesidad económica para pagar los gastos desglosados por la Apelante durante la vista evidenciaria.

Más aún, para ser acreedor al relevo pretendido, el Apelado debía demostrar que ocurrió un cambio sustancial en sus recursos económicos o en la necesidad económica de la alimentista. Ello no ocurrió en el caso de autos; al contrario, en comparación con sus gastos, los ingresos de la Apelante se han mantenido bajos, mientras el Apelado ha mantenido ingresos altos que reflejan amplia capacidad para satisfacer la Pensión.

V.

Por los fundamentos que anteceden, se revoca y deja sin efecto el relevo de la pensión de excónyuge decretado en la sentencia apelada; a los fines del cómputo de cualquier cantidad por atrasos,

---

[15] *Íd.*, a la pág. 189, línea 22.
[16] TPO, vista del 23 de junio de 2025, pág. 57, líneas 1-9, pág. 63, líneas 21-25, pág. 163, líneas 9-12 y pág. 164, líneas 1-2.
[17] TPO, vista del 13 de febrero de 2025 pág. 59, líneas 10-25

se entenderá que la obligación de satisfacer la referida pensión nunca dejó de existir.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones