Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL I

| CARLOS MIGUEL AMADEO PUMAREJO<br><br>Recurrido<br><br>v.<br><br>MARIE-AZÉLINE IRENE JANINE GODET<br><br>Peticionaria | TA2026CE00372 | *Certiorari* -**se acoge como *Apelación*-** procedente del Tribunal de Primera Instancia, Sala Superior de San Juan<br><br>Caso núm.: AG2021RF00173 (701)<br><br>Sobre: Divorcio - Ruptura Irreparable |
|---|---|---|

Panel integrado por su presidente, el juez Sánchez Ramos, la jueza Romero García y el juez Pérez Ocasio.

Sánchez Ramos, juez ponente

**SENTENCIA**

En San Juan, Puerto Rico, a 27 de abril de 2026.

Luego de imputarle ingresos, correspondientes al salario mínimo, a una madre no custodia, el Tribunal de Primera Instancia ("TPI"), acogiendo la recomendación del Examinador de Pensiones Alimentarias, formulada luego de la celebración de una vista evidenciaria, le impuso una pensión alimentaria a favor de su hijo. Según se explica en detalle a continuación, concluimos que procede la confirmación de lo actuado por el TPI, al no haberse demostrado que haya mediado error alguno.

I.

El Sr. Carlos M. Amadeo Pumarejo (el "Padre") y la Sa. Marie-Azéline Irene Janine Godet (la "Madre") estuvieron casados entre sí y procrearon al menor OAG[1] (el "Menor" o el "Hijo"), quien al momento tiene ocho (8) años. El 30 de julio de 2025, la Madre regresó a Francia y entregó la custodia del Menor al Padre.[2]

---

[1] Hacemos referencia al hijo de las partes mediante sus iniciales por tratarse de un menor de edad.

[2] Véase, *Moción en Solicitud de Ratificación de Custodia Monoparental*, Entrada 551 de SUMAC y *Moción Informativa y Solicitud de Relevo de Representación Legal*, Entrada 549 de SUMAC.

Destacamos que, de la *Moción Informativa y Solicitud de Representación Legal,* se desprende que hasta ese momento la Madre tenía representación legal por medio del Programa de Práctica Privada de la Corporación de Servicios Legales de Puerto Rico, Inc. Además, surge que, a partir de ese momento, la Corporación de Servicios Legales determinó que la Madre quedó fuera de los criterios de elegibilidad para continuar recibiendo sus servicios.[3]

En enero de 2026, el TPI refirió el caso al Examinador de Pensiones para el establecimiento de una pensión alimentaria a favor del Menor.  El 25 de febrero, el Examinador de Pensiones celebró la vista sobre establecimiento de pensión alimentaria.  La Madre compareció por derecho propio y utilizó los servicios de una intérprete, la Sa. Kamir Martínez González.

El 5 de marzo, el Examinador de Pensiones presentó el Informe del Examinador de Pensiones Alimentarias (el "Informe").  El Examinador determinó que la Madre "se encuentra desempleada" y que, según ella misma declaró, "no ha realizado gestiones de búsqueda de empleo".  El Informe reconoció que la Madre declaró que "se encuentra bajo un tratamiento de salud", pero concluyó que la Madre "no presentó prueba alguna que nos permita concluir que está incapacitada para trabajar y producir ingresos."

Por tanto, se le imputó a la Madre "el ingreso que podría generar de estar trabajando 40 horas a la semana y generando el salario mínimo federal prevaleciente en Puerto Rico ($7.25 por hora) por cada una de esas horas."  Finalmente, el Informe recomendó que se le impusiera a la Madre una pensión alimentaria de $493.28 mensuales.

Mediante una *Resolución* notificada el 6 de marzo (el "Dictamen"), el TPI acogió la recomendación del Examinador de

---

[3] Entrada 549 de SUMAC.

Pensiones y estableció una pensión alimentaria de $493.28 mensuales.

Inconforme, la Madre presentó, el 26 de marzo, el recurso de referencia, el cual hemos determinado acoger como una apelación, por solicitarse la revisión de la imposición de una pensión alimentaria final[4]. Según lo autoriza la Regla 7(B)(5) del Reglamento del Tribunal de Apelaciones, resolvemos sin trámite ulterior.

II.

La obligación de proveer alimentos a los hijos menores de edad es parte del derecho a la vida establecido en el Artículo 2 de la Sección 7 de la Constitución del Estado Libre Asociado del ELA. Const. PR, Art. 2, Sec. 7, 1 LPRA; *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016)*, Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 711 (2014); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 560 (2012); *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632 (2011); *McConnell v. Palau*, 161 DPR 734, 745 (2004). Toda vez que el derecho de los menores a recibir alimentos es uno consustancial al derecho a la vida, existe un alto interés público de asegurar el cumplimiento del deber de prestar alimentos. *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016 (2010); *Chévere v. Levis*, 150 DPR 525, 535 (2000); *Martínez v. Rodríguez*, 160 DPR 145, 150-151 (2003); *Argüello v. Argüello*, 155 DPR 62, 69-70 (2001). En virtud de ello, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, conocida como la Ley Orgánica de la Administración para el Sustento de Menores, según enmendada, 8 LPRA sec. 501 *et seq.* (la "Ley 5"). *Rodríguez Rivera*, 191 DPR a las págs. 711-712.

La obligación de alimentar a los hijos se funda en los principios universalmente reconocidos de solidaridad humana

---

[4] Por conveniencia administrativa, se mantiene la clasificación alfanúmerica asignada inicialmente. Además, se declara con lugar la solicitud de la Madre de litigar *in forma pauperis.*

asociados al derecho natural y es imperativo de los vínculos familiares. *Rodríguez Avilés v. Rodríguez Beruff,* 117 DPR 616, 621 (1986). Dicho deber de alimentar está reglamentado en los Artículos 653-657 del Código Civil de Puerto Rico, 31 LPRA secs. 7531-7535; en la Ley 5, *supra,* y en las *Guías mandatorias para computar las pensiones alimentarias en Puerto Rico* (las "Guías Mandatorias").

En lo pertinente, el Artículo 653 del Código Civil, 31 LPRA sec. 7531, establece que se entenderá por alimento "todo lo que es indispensable para el sustento, la vivienda, la vestimenta, la recreación y la asistencia médica de una persona, según la posición social de su familia". En el caso de los menores de edad, los alimentos incluyen, además, su educación, las atenciones de previsión ajustadas a los usos y circunstancias de su entorno familiar y social, así como los gastos extraordinarios necesarios para atender condiciones personales especiales. *Íd.*

La pensión alimentaria será fijada tomando en consideración lo dispuesto en la Ley 5, *supra,* y en las Guías Mandatorias. Ahora bien, siempre será fijada y podrá ser posteriormente aumentada o disminuida, de manera proporcional a los recursos o ingresos del alimentante y las necesidades del alimentista. 31 LPRA sec. 565. **Es decir, las determinaciones relacionadas con alimentos siempre están sujetas a modificación según varíen las circunstancias de las partes**. Este tipo de adjudicación nunca tiene el carácter de cosa juzgada. *Figueroa v. Del Rosario,* 147 DPR 121, 129 (1998); *Cantellops v. Cautiño Bird,* 146 DPR 791, 806 (1998).

Claro está, el tribunal no se limita a considerar únicamente la prueba oral o documental relacionada con los ingresos, sino que puede evaluar factores tales como el estilo de vida del alimentante, su capacidad para generar ingresos, la naturaleza y el valor de los bienes que posee, la naturaleza de su empleo o profesión y cualquier

otra fuente de ingreso disponible. *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 563-566 (2012); *Argüello v. Argüello*, 155 DPR 62, 73 (2001); *Chévere Mouriño v. Levis Goldstein*, 152 DPR 492, 501 (2000).

Por otro lado, el "alimentante no puede reducir la cuantía de la obligación sin la autorización judicial." Art. 672 del Código Civil, 31 LPRA sec. 7568. En caso de que ocurra un cambio en las circunstancias del alimentante que ameriten una modificación de la pensión, este deberá someter una solicitud de reducción al tribunal y, luego de probar sus fundamentos, el juzgador dictara su resolución, la cual será efectiva desde la fecha en que se emita. *Íd.* Además, destacamos que "[l]a insolvencia del alimentante no le exime del pago de la pensión." Art. 678 del Código Civil, 31 LPRA sec. 7574. Ante dichas circunstancias, el tribunal puede modificar el modo de pago, pero no la cuantía razonable que necesite el alimentista para su subsistencia y desarrollo integral. *Íd.*

III.

Luego de un cuidadoso examen del récord, concluimos que procede confirmar el Dictamen, pues no se ha demostrado que el TPI haya cometido algún error de derecho o en la valoración de la evidencia que tuvo ante sí.

Aunque la Madre arguye que su desempleo ha sido atribuible a "problemas de salud", e indica que sometió prueba documental sobre ello, no hay apoyo en el récord para esta contención. Los documentos sometidos ante este Tribunal por la Madre no acreditan que esté actualmente incapacitada para trabajar o generar ingresos.[5] Por su parte, la Madre tampoco alega haber declarado al respecto ante el Examinador. De todas maneras, para acreditar incapacidad para trabajar, hubiese sido necesario presentar prueba

---

[5] Ello sin tomar en consideración que estos documentos no fueron oportunamente presentados ante el TPI, por lo cual no pueden ser considerados en esta etapa.

médica o pericial, cosa que la Madre no ha alegado haber hecho ante el TPI. Por lo tanto, la Madre falló en presentar evidencia que permitiera al TPI determinar que está actualmente imposibilitada de generar ingresos.

Al carecer el récord de evidencia que sustente la alegación de incapacidad de la Madre, se sostiene lo actuado por el TPI en cuanto a imputarle ingresos de conformidad con el salario mínimo aplicable. Ello cónsono con su obligación de aportar a la manutención de su Hijo[6].

IV.

Por los fundamentos que anteceden, se confirma la Resolución apelada.

Lo acuerda y manda el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

Lcda. Lilia M. Oquendo Solís
Secretaria del Tribunal de Apelaciones

---

[6] Por supuesto, la Madre podría solicitar la reducción o eliminación de la pensión, o bien el relevo del Dictamen, sobre la base de prueba fehaciente a los efectos de que se encuentra incapacitada para trabajar.