# 2006 DTA 126

**TRIBUNAL DE APELACIONES
REGIÓN JUDICIAL DE PONCE
PANEL X**

JESSICA CAPPAS NEGRÓN
Peticionaria

v.

ROBERTO PÉREZ YORDÁN
Recurrido

Núm. KLCE-06-00186

San Juan, Puerto Rico, a 20 de octubre de 2006

Panel integrado por su Presidente, el Juez Brau Ramírez,
el Juez Colón Birriel y la Juez Hernández Torres

Brau Ramírez, Juez Ponente

## TEXTO COMPLETO DE LA SENTENCIA

### I

La peticionaria Jessica Cappas Negrón estuvo casada con el recurrido Roberto Pérez Yordán. Las partes contrajeron matrimonio en Ponce en abril de 1999.

Durante su matrimonio, procrearon una hija que al presente es menor de edad.

El recurrido es militar. Durante su matrimonio, el recurrido fue asignado a una base en el Estado de Texas. La pareja vivió en dicho estado por un tiempo. No pagaban por su alojamiento, el cual era provisto por el Ejército de los Estados Unidos.

Posteriormente, surgieron desavenencias entre las partes. La peticionaria regresó a residir en Puerto Rico, en casa de su mamá.

En 2002, la pareja compareció ante el Tribunal de Primera Instancia, Sala Superior de Ponce, y solicitó el divorcio por consentimiento mutuo. Para esa fecha, la peticionaria trabajaba en las tiendas Sam's Club y Wal-Mart y estudiaba en la Universidad. El recurrido continuaba en el ejército.

El Tribunal emitió la correspondiente sentencia de divorcio el 27 de marzo de 2002. Por acuerdo entre ellos, ambas partes retuvieron la patria potestad sobre su hija. No obstante, la custodia sobre la menor fue asignada a la peticionaria. Conforme a lo acordado por las partes, el Tribunal le fijó una pensión alimentaria de $350.00 al recurrido a favor de la menor. El Tribunal también dispuso que el recurrido sería responsable de proveerle un plan médico a la menor y de pagarle el 75% de los gastos médicos no cubiertos por dicho plan.

Según la peticionaria, para la época en que ella trabajaba, la madre de la peticionaria cuidaba de su hija. La peticionaria alega que ella le pagaba $50.00 semanales a su mamá por dicho servicio.

Luego del divorcio entre las partes, la peticionaria comenzó a trabajar como maestra en el Departamento de Educación del Estado Libre Asociado de Puerto Rico. El recurrido continuó en el Ejército y eventualmente fue asignado a un puesto militar en Alemania.

A la fecha de los hechos, el recurrido devengaba un ingreso mensual bruto de $1,957.80. Su salario mensual neto era de $1,679.60. ■ Recibía, además, un subsidio mensual (*"Basic Allowance for Subsistence"*) de $267.10, para un ingreso neto mensual de $1,946.70.

Además de dicha suma, el recurrido recibía un pago mensual de $357.99 del Ejército por costo de vida (*"C.O. L.A."*), para equiparar su salario al valor adquisitivo del Eurodólar, el cual es mayor que la moneda americana.

La peticionaria alega que el salario mensual neto del recurrido es mayor, ya que al recurrido recibe un reintegro de más del 50% de las contribuciones pagadas por él.

Por su parte, el ingreso bruto mensual de la peticionaria como maestra en el Departamento de Educación es de $1,825.00. Su ingreso mensual neto es de $1,468.00.

Para la fecha de los hechos, la peticionaria había contraído matrimonio con otra persona, quien también labora como maestro en el Departamento de Educación del Estado Libre Asociado de Puerto Rico. La peticionaria y su nuevo esposo procrearon un hijo.

El salario bruto mensual del esposo de la peticionaria es de $2,000.00. Sus deducciones son un poco mayores

a las de ella.

Luego de su matrimonio, la peticionaria y su nuevo esposo adquirieron una residencia en la Urbanización Estancias del Sur de Juana Díaz. La peticionaria y su esposo pagan $736.00 mensuales por dicha propiedad.

A pesar de que la peticionaria es maestra en el sistema de Educación Pública, decidió matricular a su hija en una escuela privada, debido a que ésta no había cumplido 5 años. La peticionaria discutió dicha decisión con el recurrido, quien no estuvo de acuerdo y quien le solicitó que la niña debía ser matriculada en una escuela pública. La peticionaria paga $285.33 mensuales por este concepto, lo que incluye $250.00 de mensualidad, $45.00 por gastos de comedor y $39.50 por concepto de matrícula. ■

El 27 de mayo de 2004, la peticionaria presentó ante el Tribunal de Primera Instancia una solicitud de aumento de la pensión alimentaria fijada al recurrido. La peticionaria alegó que el ingreso del recurrido había aumentado, así como también los gastos asociados al mantenimiento de la menor. La peticionaria solicitó al Tribunal que le ordenara al recurrido contribuir al pago de sus gastos extraordinarios de vivienda y de la escuela privada de la menor. También alegó que el recurrido venía obligado a contribuir en el pago de los gastos de cuido de la menor.

El recurrido se opuso a la solicitud de aumento de pensión presentada por la peticionaria.

Oportunamente, el Tribunal de Primera Instancia refirió la controversia a la Examinadora de Pensiones Alimentarias.

Luego de otros trámites, incluyendo la celebración de una vista evidenciaria ante la Examinadora, dicha funcionaria emitió un informe el 22 de diciembre de 2005, en el que recomendaba que se denegara la solicitud de aumento de pensión presentada por la peticionaria.

En su informe, la Examinadora de Pensiones determinó que el ingreso mensual neto del recurrido era de $1,946.70, por lo que conforme a las Guías Para Determinar y Modificar Pensiones Alimentarias en Puerto Rico, le correspondía pagar una pensión alimentaria básica de $287.92, menor a los $350.00 que estaba pagando. Al llegar a esta determinación, la Examinadora no consideró el pago mensual de $357.99 que recibe el recurrido por concepto de ajuste por costo de vida.

La Examinadora también concluyó que los gastos extraordinarios reclamados por la peticionaria resultaban improcedentes.

La Examinadora entendió que, aunque la peticionaria había declarado que previamente ella le pagaba $50.00 mensuales a su mamá para que le cuidara a su hija mientras la peticionaria trabajaba, la menor ahora recibía cuido en su escuela. Concluyó que *"[l]a realidad es que al día de hoy el gasto por concepto de cuido no existe."*

La Examinadora también entendió que no procedía imponer al recurrido un pago adicional por el gasto de vivienda de la peticionaria, ya que éste había surgido como consecuencia del nuevo matrimonio de la peticionaria, debido a la determinación de la peticionaria y su nuevo esposo de adquirir una propiedad para ellos.

La Examinadora también entendió que, habiendo estado en desacuerdo el recurrido con que la menor fuese matriculada en una escuela privada, no procedía imputarle a él el gasto extraordinario asociado con dicha escuela.

Mediante resolución emitida el 30 de diciembre de 2005, el Tribunal de Primera Instancia acogió la recomendación de la Examinadora de Pensiones y denegó la solicitud de aumento de pensión presentada por la peticionaria.

La peticionaria presentó una moción de reconsideración, que no fue acogida por el Tribunal.

Insatisfecha, la peticionaria acudió ante este foro.

Tratándose de un dictamen relacionado con una pensión alimentaria, acogimos el recurso como uno de apelación. *Figueroa v. Del Rosario*, 147 D.P.R. 121, 128 (1998).

Procedemos a resolver.

## II

En su recurso, la peticionaria plantea que el Tribunal de Primera Instancia erró al denegar su solicitud de aumento de pensión y al formular varias de sus determinaciones de hechos.

En Puerto Rico, según se conoce, la obligación de los padres de proveer para los alimentos de sus hijos menores está revestida del más alto interés público. Véase, la declaración de política pública de la Ley Orgánica de la Administración para el Sustento de Menores, 8 L.P.R.A. sec. 502 (Supl. 2005); *Martínez v. Rodríguez*, 160 D.P.R. ___ (2003), **2003 J.T.S. 134**, a las págs. 30-31; *Figueroa Robledo v. Rivera Rosa*, 149 D.P.R. 565, 572 (1999); *Soto Cabral v. E.L.A.,* 138 D.P.R. 298, 322 (1995).

La obligación de alimentar, según lo ha resuelto el Tribunal Supremo de Puerto Rico, dimana del derecho a la vida garantizado por el Artículo II, Secs. 1 y 7, de la Constitución del Estado Libre Asociado de Puerto Rico. *Ríos Sánchez v. Narváez Calderón*, 163 D.P.R. ___ (2005), **2005 J.T.S. 3**, a la pág. 604; *Martínez v. Rivera Hernández*, 116 D.P.R. 164, 168 (1985).

Esta obligación halla base en principios universalmente reconocidos de solidaridad humana asociados al derecho natural a la vida e imperativos de los vínculos familiares, *Maldonado v. Cruz Arce,* 161 D.P.R. ___ (2004), **2004 J.T.S. 8**, a la pág. 537; *Chévere Mouriño v. Levis Goldstein,* 152 D.P.R. 492, 498 (2000); *Rodríguez Avilés v. Rodríguez Beruff*, 117 D.P.R. 616, 621 (1986), y está expresamente estatuida en los arts. 143 y 153 del Código Civil de Puerto Rico, 31 L.P.R.A. secs. 562 y 601. *Guadalupe Viera v. Morell*, 115 D.P.R. 4, 11-13 (1983).

El concepto de "*alimentos*" incluye todo aquéllo que sea indispensable para el sustento, habitación, vestido y asistencia médica, según la posición social de la familia. *McConnell v. Palau*, 161 D.P.R. ___ (2004); **2004 J.T.S. 73**, a las págs. 992-993; *Argüello v. Argüello*, 155 D.P.R. 62, 70 (2001); *Chévere Mouriño v. Levis Goldstein*, 152 D.P.R. a la pág. 501; *Mundo v. Cervoni*, 115 D.P.R. 422, 426 (1984); *Guadalupe Viera v. Morell*, 115 D.P.R. a la pág. 14; 31 L.P.R.A. sec. 561.

Los alimentos también comprenden la educación del alimentista cuando éste es menor de edad y hasta que termine la carrera por él iniciada. 31 L.P.R.A. sec. 561; *Argüello v. Argüello*, 155 D.P.R. a la pág. 70; *Key Nieves v. Oyola Nieves*, 116 D.P.R. 261, 266 (1985); *Guadalupe Viera v. Morell,* 115 D.P.R. a la pág. 14.

La cuantía de los alimentos se fija de forma proporcionada, no sólo a las necesidades del alimentista, sino también a los recursos que el alimentante tiene a su disposición. 31 L.P.R.A. sec. 565; *Chévere v. Levis,* 150 D.P.R. 525, 534 (2000); *Rodríguez Avilés v. Rodríguez Beruff,* 117 D.P.R. a la pág. 621; véase, además, 8 L.P.R.A. sec. 518 (Supl. 2005).

El Artículo 153 del Código Civil, 31 L.P.R.A. sec. 601, en este sentido, impone la obligación a los padres de alimentar a sus hijos menores no emancipados "*con arreglo a su fortuna*". *Vega v. Vega Oliver*, 85 D.P.R. 675, 679 (1962).

La Ley Orgánica de la Administración de Sustento de Menores, por su parte, define los ingresos que se tomarán en cuenta para determinar una pensión alimenticia:

*""Ingresos" -Comprende cualquier ganancia, beneficio, rendimiento o fruto derivado de sueldos, jornales o compensación por servicios personales, incluyendo la retribución recibida por servicios prestados como funcionario o empleado del Estado Libre Asociado de Puerto Rico, del gobierno de los Estados Unidos de América, ...; o de profesiones, oficios, industrias, negocios, comercio o ventas; o de operaciones en propiedad, bien sea mueble o inmueble, que surjan de la posesión o uso del interés en tal propiedad; también los derivados de intereses, rentas, dividendos, beneficios de sociedad, valores o la operación de cualquier negocio explotado con fines de lucro o utilidad; y ganancias, beneficios, rendimientos, fondos emolumentos o compensación derivados de cualquier procedencia, incluyendo compensaciones como contratista independiente, compensaciones por desempleo, compensaciones por incapacidad, beneficios de retiro y pensiones o cualquier otro pago que reciba un alimentante de cualquier persona natural o jurídica."*

8 L.P.R.A. sec. 501(16) (Supl. 2005).

Dicho estatuto añade que, al determinar los recursos económicos del obligado a pagar una pensión alimentaria, se tomará en consideración, además del ingreso neto ordinario, *"el capital o patrimonio total"* del alimentante. 8 L.P.R.A. sec. 518 (Supl. 2005). ■

Cuando cualquiera de los padres constituye una nueva sociedad conyugal gobernada por el régimen de sociedad legal de gananciales, los bienes de ésta se deben considerar al fijar la pensión alimenticia del hijo habido en un matrimonio anterior. Se presume que el padre que se ha casado habrá de beneficiarse de los ingresos y bienes adquiridos por la sociedad y/o su cónyuge. Véase, *López v. Rodríguez*, 121 D.P.R. a la pág. 31; *Mundo v. Cervoni*, 115 D.P.R. a la pág. 424; *Vega v. Vega*, 85 D.P.R. 675, 679-80 (1962); 31 L.P.R.A. sec. 3661; véase, además, *Maldonado v. Cruz, Arce*, **2004 J.T.S. 8**, a la pág. 537.

Las determinaciones relacionadas a los alimentos siempre están sujetas a modificación, según varíe la capacidad del alimentante para proveer los alimentos o la necesidad del alimentista para recibirlos. Este tipo de adjudicación no tiene el carácter de cosa juzgada. *Figueroa v. Del Rosario*, 147 D.P.R. a la pág. 129; *Cantellops v. Cautiño Bird*, 146 D.P.R. 791, 806 (1998); *Magee v. Alberro*, 126 D.P.R. 228, 233 (1990); *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. 61, 73 (1987); véase, además, *Igaravidez v. Ricci*, 147 D.P.R. 1 (1998).

La Ley Orgánica de la Administración Para el Sustento de Menores contempla, en este sentido, que las pensiones alimentarias sean revisadas cada tres (3) años. 8 L.P.R.A. sec. 518 (Supl. 2005).

También puede solicitarse dicha revisión antes de esta fecha, si ha ocurrido un cambio significativo en las circunstancias de las partes. *Aponte v. Barbosa Dieppa*, 146 D.P.R. 558, 579 (1998).

Para justificar la modificación de la pensión, tiene que haberse producido una alteración sustancial en las necesidades del alimentista o en los recursos económicos del alimentante. *McConnell v. Palau*, **2004 J.T.S. 73**, a las págs. 992-993; *Cantellops v. Cautiño Bird*, 146 D.P.R. a la pág. 806; *Aponte v. Barbosa Dieppa*, 146 D.P.R. a la pág. 579; *Magee v. Alberro*, 126 D.P.R. a la pág. 233; *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. a la pág. 77.

El peso de la prueba recae sobre la parte que solicita la revisión de la pensión para establecer las circunstancias que hacen necesario que sea modificada, *Argüello v. Argüello*, 155 D.P.R. a la pág. 78; *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. a la pág. 78.

La Ley Orgánica de la Administración Para el Sustento de Menores establece el nombramiento de

Examinadores para presidir vistas sobre pensiones alimentarias, a quienes pueden ser referidas este tipo de controversias. 8 L.P.R.A. sec. 512 (Supl. 2005).

Los Examinadores de Pensiones tienen la facultad de celebrar vistas y formular determinaciones de hechos y conclusiones de derecho y de recomendar remedios a los jueces en cualquier procedimiento referente a pensiones alimentarias. 8 L.P.R.A. sec. 512 (Supl. 2005).

En la situación de autos, como parte de los acuerdos de su divorcio, las partes estipularon que el recurrido pagaría una pensión alimentaria de $350.00 mensuales a favor de su hija, le proveería de un plan médico y cubriría el 75% de cualquier otro gasto médico no incluido dentro del plan.

La peticionaria ha solicitado un aumento en dicha pensión, alegando que ha experimentado cambios en su situación económica. La Examinadora de Pensiones examinó la evidencia y concluyó que la peticionaria no había conseguido justificar el aumento solicitado.

La norma, según se conoce, es que las determinaciones formuladas por el juzgador de los hechos en Primera Instancia merecen deferencia y no serán alteradas por el tribunal apelativo, en ausencia de error manifiesto, pasión, prejuicio o parcialidad. *Argüello v. Argüello*, 155 D.P.R. a las págs. 78-79; *Colón González v. K-Mart*, 154 D.P.R. 510, 520 (2001); *Orta v. Padilla*, 137 D.P.R. 927, 937 (1995); *Rodríguez Oyola v. Machado Díaz*, 136 D.P.R. 250, 258 (1994).

Al recibir la prueba en primera instancia, el juzgador de los hechos está en una mejor posición que este Tribunal para realizar su evaluación. *Argüello v. Argüello*, 155 D.P.R. a la pág. 79; *Trinidad v. Chade*, 153 D.P.R. 280, 291 (2001); *Flores v. Soc. de Gananciales*, 146 D.P.R. 45, 49-50 (1998).

En la situación de autos, hemos considerado los argumentos de la peticionaria, a la luz del récord, y no encontramos motivos para intervenir con la decisión del Tribunal de Primera Instancia.

La peticionaria alega que el Tribunal erró al determinar que el recurrido tenía un ingreso mensual neto de tan sólo $1,946.70, por lo que la cantidad de su pensión, a base de las Guías, debía ser de $287.92 mensuales. La peticionaria señala que el Tribunal incidió al no considerar como ingreso imputable al recurrido la partida mensual de $357.99 que éste recibe por ajuste de costo de vida.

Dicho argumento nos parece meritorio, a base de la amplia definición de ingreso establecida por la Ley, 8 L.P.R.A. sec. 501(16) (Supl. 2005). No obstante, ello no justificaría dejar sin efecto la determinación del Tribunal. Lo cierto es que, según expone la peticionaria, la consideración de la partida en cuestión resultaría en una pensión mensual de $344.72, la cual todavía es inferior a la suma mensual de $350.00 que aporta el recurrido.

La peticionaria también plantea que el Tribunal debió considerar que al recurrido se le reembolsa una cantidad sustancial de las deducciones que se le hacen por contribuciones federales y que las deducciones por concepto de seguro ($16.25) y por A.F.R.H. ($.50) no benefician a la menor. No estimamos, sin embargo, que el Tribunal hubiera errado al considerar que dichas deducciones de hecho reducen el ingreso efectivo con que cuenta el recurrido.

La peticionaria alega que el Tribunal erró al no admitir los gastos extraordinarios reclamados por ella. No entendemos que la determinación del Tribunal sobre dicho particular sea claramente errónea.

La peticionaria reclama un gasto extraordinario de $50.00 semanales para el cuido de su hija. Dicho gasto está basado en el testimonio de la peticionaria de que ella le pagaba dicha suma a su mamá. La Examinadora parece haber tomado dicha declaración con reservas, lo que no nos parece irrazonable. El récord refleja que cuando la

peticionaria se separó del recurrido fue a vivir a casa de su madre, quien parece haber asumido sus gastos de vivienda sin reparo alguno.

En cualquier caso, la prueba reflejó que la menor fue matriculada en una escuela, por lo que el gasto para su cuidado se ha reducido o ya no es necesario.

La peticionaria también reclama un gasto mensual de $736.00 por concepto de vivienda. El récord refleja que al momento de fijarse la pensión, la peticionaria no tenía gasto extraordinario alguno por este concepto. Dicha obligación surgió porque la peticionaria se casó y decidió adquirir una casa con su nuevo esposo.

Al igual que el Tribunal de Primera Instancia, somos de la opinión que no es razonable imponer un pago adicional al recurrido por esta razón. Lo cierto es que, según hemos señalado, el nuevo esposo de la peticionaria viene legalmente obligado a contribuir al sostenimiento de la hija de ella. *López v. Rodríguez*, 121 D.P.R. a la pág. 31; *Mundo v. Cervoni*, 115 D.P.R. a la pág. 424. No podemos decir, en estas circunstancias, que la situación económica de la peticionaria hubiera empeorado por motivo de su matrimonio al punto que requiera una mayor asistencia económica por parte del recurrido.

La peticionaria alega, finalmente, que el Tribunal erró al no reconocer partida alguna de gastos relacionada con la educación de la menor. La peticionaria reclama un gasto mensual de $285.33 por este concepto.

Se trata de un gasto no contemplado inicialmente por las partes, ya que a la fecha del divorcio, la menor aún no tenía edad escolar. No se discute que el recurrido está obligado a contribuir en el pago de la educación de la menor. 31 L.P.R.A. sec. 561; *Argüello v. Argüello*, 155 D.P.R. a la pág. 70; *Key Nieves v. Oyola Nieves*, 116 D.P.R. a la pág. 266; *Guadalupe Viera v. Morell*, 115 D.P.R. a la pág. 14.

La Examinadora de Pensiones entendió que, en esta etapa, no procedía autorizar un aumento en la pensión del recurrido por dicho fundamento, ya que el recurrido no había estado de acuerdo con que la menor fuese matriculada en un colegio privado. La Examinadora aparentemente consideró que tanto la peticionaria como su nuevo esposo son maestros en el Sistema de Educación Pública, por lo que posiblemente no se había justificado la necesidad de matricular a la menor en un colegio privado.

Se trata de una solicitud para la modificación de la pensión antes del término de tres años que dispone la Ley, por lo que el peso corresponde a la peticionaria para justificar de manera adecuada el aumento solicitado. Aunque entendemos que este tipo de gasto generalmente debe ser reconocido, en las circunstancias de este caso hemos optado por respetar la determinación del Tribunal de Primera Instancia sobre este particular.

La norma es que los alimentos a los que tiene derecho un menor dependen, en parte, de la *"posición social de la familia."* 31 L.P.R.A. sec. 561; *Argüello v. Argüello*, 155 D.P.R. a la pág. 70; *Chévere Mouriño v. Levis Goldstein*, 152 D.P.R. a la pág. 501.

En el presente caso, no está claro si la determinación de la peticionaria de matricular a su hija en un colegio privado es consistente con la posición social de las partes o si, por el contrario, se trata de un gasto excesivo, dados los medios de la peticionaria y el recurrido. Aunque no cabe duda que la educación en un colegio privado podría asistir a la menor y brindarle un mejor aprovechamiento académico, tal determinación estaría supeditada a que sus padres razonablemente cuenten con recursos para ello. ■

En la situación de autos, según hemos visto, las partes no han llegado a un acuerdo sobre este particular. La menor, por su parte, apenas tiene 5 años y comienza sus estudios. Es de anticipar que la pensión del recurrido habrá de ser revisada nuevamente, conforme lo dispone la Ley, en cuyo momento la peticionaria podrá tener la oportunidad de justificar de manera más adecuada su decisión de matricular a su hija en una institución privada y

de solicitar que el recurrido contribuya a pagar dicho gasto.

En la presente etapa, no podemos concluir que el Tribunal hubiera errado al determinar que la peticionaria no estableció que los gastos reclamados fuesen efectivamente atribuibles a un cambio significativo en sus circunstancias. *Aponte v. Barbosa Dieppa*, 146 D.P.R. a la pág. 579; *Magee v. Alberro*, 126 D.P.R. a la pág. 233; *Negrón Rivera y Bonilla, Ex parte*, 120 D.P.R. a la pág. 77.

En estas circunstancias, declinamos intervenir con la resolución recurrida.

Por los fundamentos expresados, se confirma la resolución apelada.

Lo pronunció y lo manda el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Mildred Ivonne Rodríguez Rivera
Secretaria Interina del Tribunal de Apelaciones

## ESCOLIOS 2006 DTA 126

**1.** Según expone la peticionaria, el recurrido estaba sujeto a las siguientes deducciones mensuales: $102.41 por concepto de impuestos sobre ingresos; $121.38 por concepto de Seguro Social; $28.39 por concepto de pagos de Medicare; $16.25 por concepto de pagos de seguro de vida y $.50 por concepto de pago de A.F.R.H., para un total mensual de deducciones de $268.93.

**2.** Hemos tomado estas cifras del informe de la Examinadora. La suma de las cuantías excede la cifra indicada.

**3.** El Tribunal Supremo de Puerto Rico ha aclarado que al determinar la cuantía de una pensión se deben considerar aspectos tales como el estilo de vida del alimentante, su capacidad para generar ingresos, la naturaleza y cantidad de propiedades con que cuenta, la naturaleza de su empleo o profesión y sus otras fuentes de ingreso. *Ferrer v. González*, 162 D.P.R. ___ (2004), **2004 J.T.S. 121**, a la pág. 10; *Argüello v. Argüello*, 155 D.P.R. a las págs. 72-73; *Chévere Mouriño v. Levis Goldstein*, 152 D.P.R. a las págs. 502-504; *Rodríguez Rosado v. Zayas Martínez*, 133 D.P.R. 406, 412 (1993); *López v. Rodríguez*, 121 D.P.R. 23, 33 (1988).

Se deben considerar todos los ingresos del alimentante, aun cuando no aparezcan informados en la Planilla de Información Personal y Económica. *Rodríguez Rosado v. Zayas Martínez*, 133 D.P.R. a la pág. 412. Como cualquier otro hecho, los ingresos del alimentante pueden ser determinados a base de evidencia circunstancial sobre su estilo de vida y gastos. *Argüello v. Argüello*, 155 D.P.R. a la pág. 74; *López v. Rodríguez*, 121 D.P.R. a la pág. 33.

**4.** Desde luego, si cuenta con recursos suficientes, un alimentante no puede evadir su responsabilidad de contribuir con los gastos educativos de sus hijos mediante su desacuerdo con que sean matriculados en una institución privada de educación. Se trata, según hemos señalado, de un gasto expresamente contemplado por la Ley. 31 L.P.R.A. sec. 561; *Argüello v. Argüello*, 155 D.P.R. a la pág. 70; *Key Nieves v. Oyola Nieves*, 116 D.P.R. a la pág. 266; *Guadalupe Viera v. Morell*, 115 D.P.R. a la pág. 14.