Estado Libre Asociado de Puerto Rico
TRIBUNAL DE APELACIONES
PANEL ESPECIAL[1]

| | | |
|---|---|---|
| KELVIA MUÑIZ DEL RÍO<br><br>Recurrida<br><br>v.<br><br>OSCAR ROMÁN CORREA<br><br>Peticionario | KLCE202401338 | *CERTIORARI* procedente del Tribunal de Primera Instancia, Sala Superior de Arecibo<br><br>Civil núm. AR2020RF00458<br><br>Sobre: Divorcio (R.I.) Alimentos |

Panel integrado por su presidente el juez Sánchez Ramos, el juez Rivera Torres y el juez Salgado Schwarz.

Sánchez Ramos, Juez Ponente

**RESOLUCIÓN**

En San Juan, Puerto Rico, a 20 de diciembre de 2024.

Luego de múltiples trámites que se **iniciaron hace casi dos años** cuando un padre, quien había estipulado capacidad económica, solicitó la revisión de una pensión alimentaria, las partes recientemente estipularon una nueva pensión. El Tribunal de Primera Instancia ("TPI") le impuso al padre el pago de $3,000.00 por concepto de honorarios para el abogado de la madre. Según se explica en detalle a continuación, hemos determinado no intervenir con la discreción válidamente ejercida por el TPI al respecto.

I.

En diciembre de 2020, el TPI fijó una pensión alimentaria a favor de las dos hijas del Sr. Oscar Román Correa (el "Padre") y la Sa. Kelvia Muñiz del Río (la "Madre"), nacidas en el 2003 y 2005 (las "Hijas"). Ello luego de que el Padre asumiera capacidad económica.

---

[1] El recurso fue asignado a este panel por virtud de lo dispuesto en la Orden Administrativa OAJP-2021-086, de 4 de noviembre de 2021, sobre *Normas para la Asignación de Recursos Nuevos Previamente Presentados en el Tribunal de Apelaciones.* Como consecuencia de la referida orden, este recurso, así como todo recurso futuro que surja del caso de referencia, pendiente ante el Tribunal de Primera Instancia, será atendido por los integrantes de este panel, quienes adjudicaron los correspondientes recursos anteriores (KLCE202300951, KLCE202300538 y KLCE202300688).

La pensión se fijó por $1,500.00 mensuales, más el 100% de los gastos médicos extraordinarios, de ortodoncia y celulares. El Padre estaría obligado además a mantener un plan médico para las Hijas.

En **marzo de 2023**, el Padre presentó una *Moción en Solicitud de Revisión de Pensión Alimentaria* (la "Primera Moción"). Expuso que una de las hijas, quien estudiaba en "escuela pública", "ha ingresado a la universidad, por lo que existen cambios en las circunstancias de la alimentista que ameritan que se revise la pensión alimentaria antes de los tres años dispuestos por ley".

La Madre se opuso a la Primera Moción. Planteó que, de su faz, la misma no alegaba hechos que justificasen remedio alguno, pues de su contenido no surgía algún cambio sustancial en las circunstancias del Padre o las Hijas. Resaltó que el Padre había aceptado capacidad económica.

El 12 de mayo de 2023, el Padre presentó una *Moción para Suplementar Solicitud de Revisión de Pensión Alimentaria* (la "Segunda Moción"). Alegó que había ocurrido un "cambio sustancial en las circunstancias" de la Madre, ello por "cambios significativos en los ingresos y su capacidad de generar ingresos, lo que representa justa causa para modificar la pensión alimentaria antes de los tres años dispuestos por ley".

La Madre se opuso a la Segunda Moción. Arguyó que, al haber el Padre asumido capacidad económica, era "académico" lo relacionado con sus ingresos.

A finales de mayo de 2023, el Padre presentó una *Moción para Detallar y Unificar Alegaciones en cuanto a Solicitud de Revisión de Pensión Alimentaria* (la "Tercera Moción"; en unión a la Primera Moción y la Segunda Moción, las "Mociones"). Reiteró lo expuesto en la Primera Moción y en la Segunda Moción. Además, alegó que su hija mayor había "ingresado a la Universidad Interamericana" y la hija menor "acaba de graduarse de escuela superior" y desea

"ingresar a un Colegio técnico". Adujo que, por virtud de una determinación judicial en otro caso entre las partes, tomada en **febrero de 2023**, la Madre recibe $800 mensuales "como adelanto a su participación ganancial" y que esta había comenzado un "empleo en el Departamento de Educación". Sostuvo que la Madre "tiene un ingreso que es más del doble que el considerado cuando se fijó la pensión alimentaria en el presente caso".

La Madre se opuso a la Tercera Moción. Sostuvo que el ingreso de su actual empleo era menor al informado antes de que el Padre asumiera capacidad económica y se fijara la pensión. Indicó que, a los fines de calcular la pensión, los "800.00 mensuales … no son ingresos".

El 30 de junio de 2023, el Padre presentó una *Moción en Solicitud de Sentencia Sumaria* (la "Primera Sumaria"). En la misma planteó, en esencia, lo mismo que en la Tercera Moción; solicitó que el TPI resolviera, por la vía sumaria, que el adelanto que recibe la Madre, como adelanto a su participación ganancial, constituye "ingreso" y que, por tanto, "ha ocurrido un cambio sustancial que requiere que la pensión alimentaria sea modificada".

La Madre se opuso a la Primera Sumaria. Sostuvo que, como el Padre asumió capacidad económica, no tenía pertinencia cualquier cambio en sus ingresos. Además, señaló que, bajo lo dispuesto en el Artículo 671 del Código civil de 2020, 31 LPRA sec. 7567, la cuantía de una pensión se modifica "únicamente cuando median cambios sustanciales que alteran significativamente las necesidades del alimentista y los recursos del alimentante".

El 11 de julio de 2023, el Padre presentó una *Moción en Solicitud de Sentencia Sumaria sobre Aumento Sustancial en Ingreso de la Persona Custodia y Modificación de la Pensión Alimentaria* (la "Segunda Sumaria"; en conjunto con la Primera Sumaria, las "Mociones de Sentencia Sumaria"). Aunque añadió detalles

adicionales sobre los ingresos de la Madre a través del tiempo, en lo esencial, la Segunda Sumaria se sustenta en la misma teoría fáctica y jurídica que la Primera Sumaria. La Madre también se opuso a esta solicitud.

Mediante una Resolución notificada el 15 de agosto de 2023 (la "Resolución"), el TPI denegó la Primera Sumaria. Razonó lo siguiente:

> Conforme a lo resuelto ... en ... *Santiago Maisonet v. Maisonet Correa*, 187 DPR 550 (2012), cuando el padre alimentante acepta capacidad económica, "quedaría pendiente únicamente determinar las necesidades económicas del alimentista, para fijar la pensión alimentaria que le correspondería pagar a quien aceptó la capacidad económica". En esos casos, la pensión alimentaria se fijará ... tomando en consideración la condición económica y el estilo de vida del alimentante, en unión a las necesidades de los alimentistas, incluyendo en estas el estilo de vida al cual estaban acostumbrados. ...
>
> ... [S]e reitera que será en la vista del 5 de octubre de 2023, donde las partes desfilarán prueba, ante la Examinadora ..., tendente a establecer si han mediado cambios sustanciales que alteren significativamente las necesidades de la alimentista mayor y los recursos del alimentante.

Mediante otra Resolución notificada el mismo día, el TPI denegó la Segunda Sumaria.

En **noviembre de 2023**, el Padre presentó una *Moción en Solicitud de Revisión Rutinaria de la Pensión Alimentaria*. Sostuvo que la pensión vigente se hizo efectiva en septiembre de 2020 y que, de conformidad con la ley aplicable, correspondía una revisión de la misma por haber transcurrido tres años desde entonces.

El 19 de diciembre de 2023, el TPI notificó una Resolución mediante la cual **modificó provisionalmente la pensión** a $709.68. Además, le ordenó al Padre pagar el **52%** de los gastos universitarios y médicos de las menores, además de continuar proveyendo plan médico.

En enero de 2024, el Padre presentó una *Segunda Moción en Solicitud de Relevo de Pensión Alimentaria*. Aseveró que una de sus

hijas, ese mismo día, había cumplido 21 años de edad. Como la Madre (ni la referida hija) se opusieron a esta solicitud dentro del término brindado por el TPI, dicho foro, mediante una Orden notificada el 27 de febrero, relevó al Padre de pagar una pensión para beneficio de esta hija.

Mediante una Resolución de 5 de marzo, el TPI modificó provisionalmente la pensión a $622.68. Igual que antes, le ordenó al Padre pagar el 52% de los gastos universitarios y médicos de la hija menor, así como continuar proveyendo plan médico.

El 9 de julio, las partes presentaron una *Moción Conjunta para Informar Estipulación en cuanto a Pensión Alimentaria.* Acordaron que, efectivo 26 de febrero de 2024, la pensión por la hija menor sería de $500.00; el Padre pagaría el **100%** del gasto de ortodoncia; el Padre suplirá plan médico **y celular**; y el Padre pagará **el 100%** de los gastos universitarios y médicos de la menor. Mediante una Resolución notificada el 30 de julio, el TPI acogió la estipulación de las partes (la "Estipulación").

El 28 de agosto, la Madre solicitó al TPI que le impusiera honorarios de abogado al Padre, ello al amparo de la Ley 5, *infra.* Expuso que, desde marzo de 2023, cuando el Padre solicitó la revisión de la pensión de las Hijas, por supuestos cambios, ella ha tenido que defender sus "mejores intereses". Arguyó que, luego, al solicitar la revisión rutinaria de la pensión, el Padre había abandonado su petición original.

La Madre reseñó que el Padre había acudido tres veces a este Tribunal, y que no tuvo éxito en ninguno de los recursos (KLCE202300538, KLCE202300688 y KLCE202300951). Incluso, reseñó que, en el último de dichos recursos, este Tribunal le impuso una sanción de $1,000.00 al Padre por haber presentado un recurso frívolo, la cual, a dicha fecha, este no había pagado, a pesar de haber transcurrido el término provisto por este Tribunal para ello.

La Madre afirmó que la "litigación ha sido intensa", y que ella es una "empleada a tiempo parcial del Departamento de Educación con un sueldo que le impide satisfacer honorarios". Expuso que la gestión de su representación legal "ha sido ardua, compleja [y] delicada", y que el "expediente habla por sí solo". Planteó que su abogado había invertido más de 50 horas en el caso, desde noviembre de 2023 al presente, por lo cual solicitó que se ordenase al Padre pagarle a su abogado **$5,000.00** en concepto de honorarios de abogado.

Mediante una Orden notificada el 3 de octubre (la "Orden"), el TPI le impuso al Padre el pago de **$3,000.00** por concepto de honorarios de abogado a favor del abogado de la Madre.

El 18 de octubre, el Padre solicitó la reconsideración de la Orden, lo cual fue denegado por el TPI mediante una Orden notificada el 22 de noviembre, en la cual el TPI, además, le requirió al Padre pagar los honorarios en controversia antes del 30 de diciembre de 2024.

Inconforme, el 12 de diciembre, el Padre presentó el recurso que nos ocupa. Arguyó que el TPI no podía ordenar el pago de honorarios porque la estipulación entre las partes omitía mención alguna de dicho asunto. Sostuvo que, de conformidad con el Artículo 22 de la Ley 5, *infra*, solo proceden honorarios si la parte alimentista "prevale[ce]", mas ello no ocurrió aquí porque, como resultado de la estipulación, la pensión se había reducido. Finalmente, planteó que la cuantía concedida era excesiva, pues la Madre no había presentado un "desglose pormenorizado de las gestiones" de su abogado en el caso. Disponemos.

II.

El auto de *certiorari* constituye un vehículo procesal discrecional que permite a un tribunal de mayor jerarquía revisar las determinaciones de un tribunal inferior. *IG Builders et al. v.*

*BBVAPR,* 185 DPR 307 (2012); *Pueblo v. Díaz de León*, 176 DPR 913, 917 (2009); *García v. Padró*, 165 DPR 324, 334 (2005). Distinto al recurso de apelación, el tribunal revisor tiene la facultad de expedir el recurso de manera discrecional, por tratarse de ordinario de asuntos interlocutorios. Sin embargo, nuestra discreción debe ejercerse de manera razonable, procurando siempre lograr una solución justiciera. *Torres Martínez v. Torres Ghigliotty*, 175 DPR 83, 98 (2008); *Negrón v. Srio. de Justicia*, 154 DPR 79, 91 (2001).

La Regla 52.1 de Procedimiento Civil de 2009, 32 LPRA Ap. V, R. 52.1, reglamenta en qué circunstancias este Tribunal podrá expedir un auto de *certiorari*; al respecto, dispone, en lo pertinente (énfasis suplido):

> El recurso de *certiorari* para revisar resoluciones u órdenes interlocutorias dictadas por el Tribunal de Primera Instancia, solamente será expedido por el Tribunal de Apelaciones cuando se recurra de una resolución u orden bajo las Reglas 56 y 57 de este apéndice o de la denegatoria de una moción de carácter dispositivo. No obstante, y por excepción a lo dispuesto anteriormente, el Tribunal de Apelaciones podrá revisar órdenes o resoluciones interlocutorias dictadas por el Tribunal de Primera Instancia cuando se recurra de decisiones sobre la admisibilidad de testigos de hechos o peritos esenciales, asuntos relativos a privilegios evidenciarios, anotaciones de rebeldía, en casos de relaciones de familia, en casos que revistan interés público o en cualquier otra situación en la cual esperar a la apelación constituiría un fracaso irremediable de la justicia. …

La Regla 40 del Reglamento del Tribunal de Apelaciones, 4 LPRA Ap. XXII–B, R. 40 ("Regla 40"), establece los criterios a examinar para ejercer nuestra discreción, al disponer lo siguiente:

> El Tribunal tomará en consideración los siguientes criterios al determinar la expedición de un auto de *certiorari* o de una orden de mostrar causa:
>
> (A) Si el remedio y la disposición de la decisión recurrida, a diferencia de sus fundamentos, son contrarios a derecho.
>
> (B) Si la situación de hechos planteada es la más indicada para el análisis del problema.

(C) Si ha mediado prejuicio, parcialidad o error craso y manifiesto en la apreciación de la prueba por el Tribunal de Primera Instancia.

(D) Si el asunto planteado exige consideración más detenida a la luz de los autos originales, los cuales deberán ser elevados, o de alegatos más elaborados.

(E) Si la etapa del procedimiento en que se presenta el caso es la más propicia para su consideración.

(F) Si la expedición del auto o de la orden de mostrar causa no causan un fraccionamiento indebido del pleito y una dilación indeseable en la solución final del litigio.

(G) Si la expedición del auto o de la orden de mostrar causa evita un fracaso de la justicia.

III.

La obligación de proveer alimentos a los hijos menores de edad es parte del derecho a la vida establecido en el Artículo 2 de la Sección 7 de la Constitución del Estado Libre Asociado del ELA. Const. PR, Art. 2, Sec. 7, 1 LPRA; *De León Ramos v. Navarro Acevedo*, 195 DPR 157, 169 (2016), *Rodríguez Rivera v. De León Otaño*, 191 DPR 700, 711 (2014); *Santiago, Maisonet v. Maisonet Correa*, 187 DPR 550, 560 (2012); *Fonseca Zayas v. Rodríguez Meléndez*, 180 DPR 623, 632 (2011); *McConnell v. Palau*, 161 DPR 734, 745 (2004).

Toda vez que el derecho de los menores a recibir alimentos es uno consustancial al derecho a la vida, existe un alto interés público de asegurar el cumplimiento del deber de prestar alimentos. *Llorens Becerra v. Mora Monteserín*, 178 DPR 1003, 1016 (2010); *Chévere v. Levis*, 150 DPR 525, 535 (2000); *Martínez v. Rodríguez*, 160 DPR 145, 150-151 (2003); *Argüello v. Argüello*, 155 DPR 62, 69-70 (2001). En virtud de ello, se aprobó la Ley Núm. 5 de 30 de diciembre de 1986, conocida como la Ley Orgánica de la Administración para el Sustento de Menores, según enmendada, 8 LPRA sec. 501 *et seq.* (la "Ley 5"). *Rodríguez Rivera*, 191 DPR a las págs. 711-712.

Las determinaciones relacionadas con alimentos siempre están sujetas a modificación según varíen las circunstancias de las

partes. Este tipo de adjudicación nunca tiene el carácter de cosa juzgada. *Figueroa v. Del Rosario*, 147 DPR 121, 129 (1998); *Cantellops v. Cautiño Bird*, 146 DPR 791, 806 (1998).

La Ley 5 contempla que las pensiones alimentarias sean revisadas cada 3 años. Artículo 19(c) de la Ley 5, LPRA sec. 518(c). No obstante, pueden ser revisadas antes de esta fecha si ha ocurrido un cambio significativo o imprevisto en las circunstancias de las partes. *McConnell*, 161 DPR a las págs. 749-750; *Aponte v. Barbosa Dieppa*, 146 DPR 558, 579 (1998). En otras palabras, tiene que haberse producido una alteración sustancial en las necesidades del alimentista o los recursos económicos del alimentante. *Magee v. Alberro*, 126 DPR 228, 233 (1990); *Negrón Rivera y Bonilla, Ex parte*, 120 DPR 61, 77 (1987). El peso de la prueba recae sobre la parte que solicita la revisión de la pensión alimentaria para establecer las circunstancias que hacen necesaria que sea modificada. *Argüello*, 155 DPR a la pág. 78; *Negrón Rivera y Bonilla*, 120 DPR a la pág. 78.

Ahora bien, cuando un padre o madre alimentante admite que cuenta con medios suficientes para satisfacer sus obligaciones alimentarias para con sus hijos menores, se prescinde, por innecesario, del trámite provisto en la Ley 5, *supra*. "[C]uando un padre alimentante acepta que posee suficientes ingresos para pagar la pensión alimentaria que en derecho proceda a favor de sus hijos, promueve, con acierto, el interés público del bienestar de los menores y agiliza los procedimientos en cuanto a la otorgación de pensiones alimentarias". *Chévere*, 150 DPR a la pág. 544.

La aceptación de capacidad económica acarrea consecuencias importantes para el alimentante. De entrada, queda impedido de posteriormente impugnar la pensión que se establezca, aduciendo que no cuenta con los recursos necesarios para ello. *De León Ramos*, 195 DPR a la pág. 173; *Santiago, Maisonet*, 187 DPR a la pág. 565;

*Ferrer v. González,* 162 DPR 172, 179 (2004); *Chévere,* 150 DPR a la pág. 546.

Además, cuando el padre o madre alimentante admite capacidad para satisfacer la pensión alimentaria, el alimentante está obligado a cubrir el 100% de la pensión adjudicada. *Íd.* Así pues, una vez uno de los progenitores acepta tener capacidad económica, procede que este pague la totalidad de la pensión alimentaria que se establezca en atención exclusivamente a las necesidades del menor. *Íd.*, citando a *Ferrer, supra.* Entonces, le corresponde a la persona custodia presentar evidencia de los gastos razonables de los menores, así como del estilo de vida del alimentante, para determinar el total de la pensión que el alimentante debe pagar. *Íd.*, citando a *Santiago, Maisonet, supra.*

Por su parte, el Artículo 22(1) de la Ley 5 **obliga al TPI a imponer honorarios de abogado** en casos en que se establezca una pensión alimentaria. En efecto, se dispone allí que en "cualquier procedimiento bajo esta Ley para la fijación, modificación o para hacer efectiva una orden de pensión alimentaria, el tribunal, o el Juez Administrativo deberá imponer al alimentante el pago de honorarios de abogado a favor del alimentista cuando éste prevalezca". 8 LPRA sec. 521(1).

IV.

Concluimos que actuó correctamente el TPI al imponer honorarios de abogado al Padre. En primer lugar, no tiene pertinencia que las partes no acordaran nada al respecto al estipular una nueva pensión. Ante la omisión de las partes de alcanzar un acuerdo sobre este asunto, el TPI venía obligado a cumplir con lo dispuesto por ley sobre este asunto.

En segundo lugar, tampoco podemos concluir que el alimentista no haya prevalecido en este caso. La realidad es que la pensión se mantuvo para la hija menor de las partes e, incluso, en algunos respectos, la Estipulación resultó en un aumento en la

responsabilidad del Padre en comparación con la pensión provisional que estaba vigente, pues se aumentó a 100% (de un 52%) su porción de los gastos médicos y universitarios. El hecho de que la pensión se haya reducido porque la hija mayor alcanzó la mayoría de edad y esta decidió no reclamar pensión para sí no tiene pertinencia al determinar si la hija menor prevaleció, ni tampoco sobre el hecho de que la Madre prevaleció en los trámites anteriores a la solicitud del Padre de revisión rutinaria de la pensión.

En cualquier caso, la realidad es que, como resultado de las gestiones del abogado de la Madre, esta pudo, con éxito, defenderse de los intentos del Padre de reducir inoportunamente el monto de la pensión vigente y luego obtener una estipulación razonable a favor de su hija menor.

Por último, y contrario a lo que plantea el Padre, el récord claramente le permitía al TPI imponerle a este el monto de $3,000.00 por concepto de honorarios de abogado. El trámite del caso ante el TPI, y ante este Tribunal, **desde marzo de 2023**, demuestra de forma fehaciente que la litigación, por casi dos años, ha sido intensa y que las gestiones del abogado de la Madre ameritaban, como mínimo, la cuantía impuesta por el TPI.

En fin, examinado el récord cuidadosamente, no podemos concluir que lo actuado por el TPI involucre algún error de derecho o abuso de discreción. Al contrario, su determinación es válida, razonable y está debidamente apoyada por el tracto procesal de este caso a la luz del derecho aplicable.

V.

Por los fundamentos antes expuestos, se deniega la expedición del auto solicitado.

Lo acordó el Tribunal, y lo certifica la Secretaria del Tribunal de Apelaciones.

LCDA. LILIA M. OQUENDO SOLÍS
Secretaria del Tribunal de Apelaciones